BOARD OF EDUCATION OF THE TOWN OF THOMASTON v.
STATE BOARD OF LABOR RELATIONS ET AL.
(14010)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued November 1, 1990—decision released January 8, 1991

*Joseph M. Celentano,* with whom was *Ronald Cordilico,* for the appellants (defendants).

*Victor M. Muschell,* for the appellee (plaintiff).

SHEA, J. This appeal arises out of an arbitrator's award ordering the plaintiff, the Thomaston board of education (board), to promote a teacher to the position of department head of the Thomaston high school English department. The board, instead of challenging the award in court, eliminated the department head position for the admitted purpose of preventing the teacher from holding the position. The teacher and the union

filed an unfair labor practice charge with the state labor
relations board (labor board), which ordered the board
of education to comply with the arbitrator's award and
restore the position. The board of education thereupon
appealed to the Superior Court, challenging both the
decision and the order. The court vacated the order of
the labor board, holding that the elimination of a teach-
ing position was in the sole discretion of the board of
education and thus that the labor board was without
authority to order the board to restore the position. This
appeal ensued.

I

The labor board's factual findings are unchallenged.
Fred Schipul taught English at Thomaston high school
for eighteen years. In December, 1985, he applied for
the position of English department chairperson, which
was then vacant. In January, 1986, the board of edu-
cation awarded the position to a less senior teacher.
Schipul filed a grievance based on the provision in the
teachers' collective bargaining agreement[1] that required

---

[1] The contractual provision in effect from 1985 through 1987 provided,
in pertinent part:

"Article 19—Promotions

"19.1 Positions as used in this section mean any position which pays a
salary differential and/or involves additional or higher level of responsibility.

"19.2 Vacancies of position which are caused by death, retirement, dis-
charge, resignation, or by the creation of a new position shall be filled pur-
suant to the following procedures:

"19.2.1 The existence of vacancies of position shall be adequately publi-
cized by a notice in every school as far in advance of the date of filling such
vacancy as possible. At all times, consideration will be given to present quali-
fied staff members who have evinced an interest in the vacated position.

"19.2.3 Teachers who desire to apply for such vacancies of position shall
file their applications in writing with the Superintendent.

"19.2.4 Such vacant positions shall be filled on the basis of qualification
for the vacant position, provided, however, that where two or more appli-
cants are equal in qualification, the applicant with the greatest amount of
seniority in the system shall be given the preference.

"19.2.5 . . . ."

the board to promote the most senior teacher "where two or more applicants are equal in qualification."[2] On August 10, 1986, the arbitrator upheld the grievance and ordered the board of education to promote Schipul, retroactively to January, 1986.

Meanwhile, before the arbitration award was made, the board of education voted to eliminate all department head positions from its budget. Two weeks *after* the award was issued, however, the board restored all department head positions—all, that is, except the position of English department head. As a result of the award, the board of education paid Schipul what he would have received as department head until the position was eliminated, but never allowed him to perform the job.

Schipul's bargaining representative, the Thomaston Education Association, duly filed an unfair labor practice charge with the labor board, claiming that the board of education's actions interfered with Schipul's statutory right to file a grievance. The board of education admitted before the labor board that its sole reason for not restoring the position of English department head was to prevent Schipul from holding that position, for which it honestly believed he was unqualified.

## II

Although the trial court's memorandum of decision did not address whether the school board's conduct constituted an unfair labor practice, that issue has been presented to us on appeal by both parties. The board of education maintains that because the arbitrator's decision was "not concerned with the future elimination of the position but only with Schipul's entitlement to the position in January, 1986, when it indeed *did*

[2] The arbitrator found that Schipul met the only qualifications that were posted.

exist," (emphasis in original) the elimination of the position in August, 1986, could not logically be a repudiation of the arbitrator's decision that Schipul was entitled to the position in January, 1986, and that, because the establishment of teaching positions is discretionary, elimination of the position could not be an unfair labor practice. The labor board contends that the board of education's action, which effectively nullified the arbitrator's award and flouted the contractually mandated grievance arbitration process, constituted a refusal to participate in good faith in mediation and arbitration, an unfair labor practice under General Statutes § 10-153e (b) (4) and (5) of the Teachers Negotiation Act (TNA).[3] We conclude that the board of education's arguments are without merit, and agree with the labor board.[4]

## A

The labor board first claims that the board of education's action was an unfair labor practice specifically prohibited by General Statutes § 10-153e (b) (5), "refusing to participate in good faith in mediation or arbi-

[3] General Statutes § 10-153e (b) provides: "The local or regional board of education or its representatives or agents are prohibited from: (1) Interfering, restraining or coercing certified professional employees in the exercise of the rights guaranteed in sections 10-153a to 10-153n; (2) dominating or interfering with the formation, existence or administration of any employees' bargaining agent or representative; (3) discharging or otherwise discriminating against or for any certified professional employee because such employee has signed or filed any affidavit, petition or complaint under said sections; (4) refusing to negotiate in good faith with the employees' bargaining agent or representative which has been designated or elected as the exclusive representative in an appropriate unit in accordance with the provisions of said sections; or (5) refusing to participate in good faith in mediation or arbitration. A prohibited practice committed by a board of education, its representatives or agents shall not be a defense to an illegal strike or concerted refusal to render services."

[4] According to the board of education's interpretation of the arbitrator's award, the board did comply with the letter of the award. Whether or not the board complied with the letter of the award, however, its conduct not sanctioned by the award may still constitute an unfair labor practice.

tration." Without discussing that particular subsection of the TNA, the board of education emphasizes the absence in the TNA of language in the Municipal Employees Relations Act (MERA), General Statutes § 7-407 et seq., specifically listing failure to comply with an arbitration award as an unfair labor practice,[5] and argues that this absence shows that the legislature did not intend failure to comply with an arbitration award to constitute an unfair labor practice under the TNA.

Before considering the implications of the legislature's decision not to include in the TNA a provision such as § 7-470 (a) (6) of MERA, we will consider the language of the TNA as it is written. Section 10-153e (b) (5) makes "refusing to participate in good faith in mediation or arbitration" an unfair labor practice. The word "arbitration" is a general term that may refer either to arbitration of individual claims that an employer has breached a collective bargaining agreement (grievance arbitration) or to arbitration of broader disputes concerning the conditions of employment in general, arising either during contract negotiations or in some cases during the term of an existing contract (interest arbi-

---

[5] General Statutes § 7-470 (a) provides: "Municipal employers or their representatives or agents are prohibited from: (1) Interfering, restraining or coercing employees in the exercise of the rights guaranteed in section 7-468; (2) dominating or interfering with the formation, existence or administration of any employee organization; (3) discharging or otherwise discriminating against an employee because he has signed or filed any affidavit, petition or complaint or given any information or testimony under sections 7-467 to 7-477, inclusive; (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit; (5) refusing to discuss grievances with the representatives of an employee organization designated as the exclusive representative in an appropriate unit in accordance with the provisions of said sections; (6) refusing to comply with a grievance settlement, or arbitration settlement, or a valid award or decision of an arbitration panel or arbitrator rendered in accordance with the provisions of section 7-472."

tration). Section 10-153e (b) (5) does not define the term further to indicate the type or types of arbitration to which it refers.

We construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation. *Ganim* v. *Roberts*, 204 Conn. 760, 763, 529 A.2d 194 (1987). Where the same words are used in a statute two or more times, they will ordinarily be given the same meaning. *State ex rel. Hyde* v. *Dowe*, 129 Conn. 266, 271, 28 A.2d 12 (1942). In the TNA, §§ 10-153d[6] and 10-153f[7] use the terms

---

[6] General Statutes § 10-153d provides in pertinent part: "(b) The local or regional board of education and the organization designated or elected as the exclusive representative for the appropriate unit, through designated officials or their representatives, shall have the duty to negotiate with respect to salaries, hours and other conditions of employment about which either party wishes to negotiate. . . . Any local board of education shall file forthwith a signed copy of any contract with the town clerk and with the commissioner of education. Any regional board of education shall file forthwith a signed copy of any such contract with the town clerk in each member town and with the commissioner of education. Upon receipt of a signed copy of such contract the clerk of such town shall give public notice of such filing. The terms of such contract shall be binding on the legislative body of the local or regional school district, unless such body rejects such contract at a regular or special meeting called and convened for such purpose within thirty days of the filing of the contract. . . .

"(c) If the legislative body rejects the contract pursuant to the provisions of subsection (b) of this section, the parties shall commence the arbitration process, in accordance with the provisions of subsection (c) of section 10-153f . . . provided, if requested by either party, the parties shall mediate the contract dispute prior to the initial arbitration hearing. . . ."

[7] General Statutes § 10-153f provides, inter alia: "MEDIATION AND ARBITRATION OF DISAGREEMENTS. . . . (b) If any local or regional board of education cannot agree with the exclusive representatives of a teachers' or administrators' unit after negotiation concerning the terms and conditions of employment applicable to the employees in such unit, either party may submit the issues to the commissioner for mediation. On the one hundred tenth day prior to the budget submission date, the commissioner shall order the parties to report their settlement. If, on such one hundred tenth day, the parties have not reached agreement and have failed to initiate mediation, the commissioner shall order the parties to notify the commissioner of the name of a mutually selected mediator and to commence mediation. The commissioner may order the parties to appear before said commissioner

"mediation" and "arbitration" to refer to a specific set of procedures a school board and teachers' union must pursue if negotiations with respect to the conditions of employment of teachers in general; General Statutes

during the mediation period. In either case, the parties shall meet with a mediator mutually selected by them, provided such parties shall inform the commissioner of the name of such mediator, or with the commissioner or the commissioner's agents or a mediator designated by said commissioner. . . .

"(c) (1) On the fourth day next following the end of the mediation session or on the eighty-fifth day prior to the budget submission date, whichever is sooner, the commissioner shall order the parties to report their settlement of the dispute or, if there is no settlement, to notify the commissioner of the name of the single arbitrator mutually selected by them or shall notify the commissioner of the name of the arbitrator selected by each of them. . . . (4) After hearing all the issues, the arbitrators or the single arbitrator shall, within twenty days, render a decision in writing, signed by a majority of the arbitrators or the single arbitrator, which states in detail the nature of the decision and the disposition of the issues by the arbitrators or the single arbitrator. . . . The decision of the arbitrators or the single arbitrator shall be final and binding upon the parties to the dispute. . . . The parties shall submit to the arbitrators or the single arbitrator their respective positions on each individual issue in dispute between them in the form of a last best offer . . . . The arbitrators or the single arbitrator shall resolve separately each individual disputed issued by accepting the last best offer thereon of either of the parties, and shall incorporate in a decision each such accepted individual last best offer . . . . Notwithstanding the provisions of subsection (b) of section 10-153d . . . the decision of the arbitrators or the single arbitrator shall not be subject to rejection by the legislative body of the local or regional school district or by referendum. . . .

"(e) The local or regional board of education and the organization designated or elected as the exclusive representative for the appropriate unit, through designated officials or their representatives, which are parties to a collective bargaining agreement, and which, for the purpose of negotiating with respect to salaries, hours and other conditions of employment, mutually agree to negotiate during the term of the agreement or are ordered to negotiate said agreement by a body of competent jurisdiction, shall notify the commissioner of the date upon which negotiations commenced within five days after said commencement. If the parties are unable to reach settlement twenty-five days after the date of the commencement of negotiations, the parties shall notify the commissioner of the name of a mutually selected mediator and shall conduct mediation pursuant to the provisions of subsection (b) of this section, notwithstanding the mediation time schedule

§ 10-153f (b), (e); reach an impasse.[8] Thus, in §§ 10-153d and 10-153f "arbitration" means interest arbitration, not arbitration of individual grievances.

If we read § 10-153e and § 10-153f concurrently, we must conclude that § 10-153e (b) (5) addresses only the contract mediation and interest arbitration procedures mandated by § 10-153f, not the arbitration of an individual employee's grievances. The alternative interpretation, that § 10-153e (b) (5) makes refusal to arbitrate any individual grievance an unfair labor practice, would impose a duty to arbitrate grievances upon a board of education even if its collective bargaining agreement included no such requirement. Had the legislature intended such a result, we believe it would have included in the TNA the plain language it used in § 7-470 (a) (6) of the MERA. The MERA, unlike the TNA, guarantees the right to mediation or arbitration of individual grievances. See General Statutes § 7-472.[9]

of subsection (b) of this section. On the fourth day next following the end of the mediation session or on the fiftieth day following the date of the commencement of negotiations, whichever is sooner, if no settlement is reached the parties shall commence arbitration pursuant to the provisions of subsections (a), (c) and (d) of this section, notwithstanding the reference to the budget submission date."

[8] In 1987, in response to our decision in *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 522 A.2d 264 (1987), the legislature amended General Statutes § 10-153f so that it now requires mediation and binding arbitration of midterm contract disputes as well as initial contract negotiation disputes. See remarks of Sen. Kevin B. Sullivan, Conn. Joint Standing Committee Hearings, Education, Pt. 3, 1987 Sess., p. 976, and 30 S. Proc., Pt. 7, 1987 Sess., p. 2613; remarks of Rep. Naomi Cohen, 30 H.R. Proc., Pt. 15, 1987 Sess., p. 5316.

[9] "[General Statutes] Sec. 7-472. MEDIATION BY STATE BOARD OF MEDIATION AND ARBITRATION. (a) The services of the state board of mediation and arbitration shall be available to municipal employers and employee organizations for purposes of mediation of grievances or impasses in contract or contract reopener negotiations and for purposes of arbitration of disputes over the interpretation or application of the terms of a written agreement and, if such service is requested by both the municipal employer and the employee organization except as provided in section 7-473c or sub-

The labor board's own decisions support our interpretation, as they have repeatedly cited § 10-153e (b) (4), not (b) (5), when finding unfair labor practices in situations similar to the one now before us. See *In the Matter of East Hartford Board of Education,* Connecticut State Board of Labor Relations Decision No. 1911 (July 7, 1980); *In the Matter of Southington Board of Education,* Connecticut State Board of Labor Relations Decision No. 1788 (July 19, 1979).

## B

In addition to finding that the board of education's conduct was an unfair labor practice under § 10-153e (b) (5), the labor board also concluded that the board of education's conduct was an unfair labor practice under § 10-153e (b) (4) as a "refus[al] to negotiate in good faith with the employees' bargaining agent." Our conclusion that repudiation of a grievance arbitration award is not an unfair labor practice under § 10-153e (b) (5) does not prevent the labor board from determining that the board's action in this case constituted an unfair labor practice under § 10-153e (b) (4).

In accordance with widely held principles of administrative and labor law, we traditionally have accorded

---

sections (h) to (k), inclusive, of section 7-474, for purposes of arbitration of impasses in contract or contract reopener negotiations. Whenever any impasse in contract or contract reopener negotiations is submitted to arbitration, the decision of the arbitration panel or arbitrator shall be rendered no later than twenty days prior to the final date by which time the budget-appropriating authority of the municipality is required to adopt its budget or forty days after the close of the arbitration hearing, whichever is later, provided that in no case except when such arbitration service is requested or mandated after the final budget adoption date shall such decision be rendered later than five days prior to such final budget adoption date. Nothing contained herein shall prevent any agreement from being entered into in accordance with the provisions of subsection (e) of section 7-474.

"(b) Nothing in this section is intended to prevent the use of other arbitration tribunals in the resolution of disputes over the interpretation or application of the terms of written agreements between municipal employers and employee organizations."

deference to the labor board's interpretation of the acts it is charged with enforcing. *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 263, 579 A.2d 505 (1990); *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 503, 522 A.2d 264 (1987); *State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 74, 411 A.2d 28 (1979). "[R]eviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act . . . ." *Bureau of Alcohol, Tobacco & Firearms* v. *Federal Labor Relations Authority,* 464 U.S. 89, 97, 98 n.8, 104 S. Ct. 439, 78 L. Ed. 2d 195 (1983); *N.L.R.B.* v. *Iron Workers,* 434 U.S. 335, 350, 98 S. Ct. 651, 54 L. Ed. 2d 586 (1978). The agency's practical construction of the statute, if reasonable, is " ' "high evidence of what the law is." ' " *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* 212 Conn. 100, 106, 561 A.2d 429 (1989). In judging whether the labor board's interpretation was reasonable, we may look to federal labor law for guidance in construing our labor relations acts. *Success Village Apartments, Inc.* v. *Local 376,* 175 Conn. 165, 168, 397 A.2d 85 (1978) (construing state Labor Relations Act); *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 579, 295 A.2d 526 (1972) (construing TNA). In light of federal labor law precedent, we consider the labor board's interpretation of the act both reasonable and persuasive.

The "duty to bargain in good faith" is a term of art in labor law. It is an ongoing duty that continues after initial contract negotiations are over. *N.L.R.B.* v. *Acme Industrial Co.,* 385 U.S. 432, 436, 87 S. Ct. 565, 17 L. Ed. 2d 495 (1967); *Fafnir Bearing Co.* v. *N.L.R.B.,* 362 F.2d 716, 717 (2d Cir. 1966); *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 503; *Board of Education* v. *State Board of Labor Relations,* 190 Conn. 235, 241–42, 460 A.2d 1255 (1983). It includes the duty to negotiate "any question arising"

under an existing contract. General Statutes
§ 10-153e (d).[10] If the contract requires arbitration of
unresolved grievances, the duty to bargain in good faith
includes the duty to participate in good faith in the
grievance arbitration process, for "dispute resolution
under the grievance-arbitration process is as much a
part of collective bargaining as the act of negotiating
the contract." *United Technologies Corporation*, 268
N.L.R.B. 557, 559 (1971); see also *United Steelworkers*
v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581,
80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960).

"Going through the motions" does not fulfill the
duty to bargain in good faith. Thus, failing to pro-
vide the other party with relevant information dur-
ing the collective bargaining process or at other
times; *Board of Education* v. *State Board of Labor
Relations*, supra, 241; failing to make contract
proposals in good faith; *New Canaan* v. *State Board
of Labor Relations*, 160 Conn. 285, 292, 278 A.2d 761
(1971); and failing to bargain before making unilateral
changes in terms and conditions of employment after
a contract has been signed; *Fibreboard Corporation* v.
*N.L.R.B.*, 379 U.S. 203, 85 S. Ct. 398, 13 L. Ed. 2d
233 (1964); *West Hartford Education Assn., Inc.* v.
*DeCourcy*, supra, 596; have all been described as

---

[10] General Statutes § 10-153e (d) provides: "As used in this section, sec-
tions 10-153a to 10-153c, inclusive, and section 10-153g, 'to negotiate in
good faith' is the performance of the mutual obligation of the board of edu-
cation or its representatives or agents and the organization designated or
elected as the exclusive representative for the appropriate unit to meet at
reasonable times, including meetings appropriately related to the budget-
making process, and to participate actively so as to indicate a present inten-
tion to reach agreement with respect to salaries, hours and other condi-
tions of employment, or the negotiation of an agreement, or any question
arising thereunder and the execution of a written contract incorporating
any agreement reached if requested by either party, but such obligation
shall not compel either party to agree to a proposal or require the making
of a concession."

breaches of the duty to bargain in good faith. These types of conduct have one thing in common: they are attempts to evade the statutorily mandated collective bargaining process. See *New Canaan* v. *State Board of Labor Relations,* supra.

The board of education's conduct fits the same description. The board and the teachers association bargained to include in their contract a provision regulating promotions and another provision providing for grievance arbitration of employment decisions, including promotions. The board of education's attempt to circumvent these provisions makes the collective bargaining process a hollow exercise.

The board of education's attempt to "evade" the arbitrator's decision is thus no different from a repudiation of the arbitration process itself. Since repudiation of the collective bargaining agreement as a whole constitutes ipso facto a breach of the duty to bargain in good faith; see *Taylor Bus Services, Inc.,* 284 N.L.R.B. 530, 550 (1987); *N.L.R.B.* v. *Hyde,* 339 F.2d 568 (9th Cir. 1964);[11] an employer who repudiates the grievance process as a whole by refusing to process

[11] Failure to comply with a provision of the collective bargaining agreement does not ipso facto constitute an unfair labor practice. *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Corporation,* 348 U.S. 437, 443–4 n.2, 75 S. Ct. 489, 99 L. Ed. 510 (1954); *N.L.R.B.* v. *M & M Oldsmobile, Inc.,* 377 F.2d 712, 715 (2d Cir. 1967). If every breach were also an unfair labor practice, any grievant could bypass the arbitration process and come straight to the labor board, thereby destroying the usefulness of the grievance arbitration process. Indeed, even where conduct (such as an allegedly discriminatory discharge) clearly would constitute an unfair labor practice, the National Labor Relations Board's policy is usually to defer to arbitration any claim that can also be characterized as a breach of contract; *United States Postal Service,* 270 N.L.R.B. 1022 (1984); *United Technologies Corporation,* 268 N.L.R.B. 557 (1984); *Collyer Insulated Wire,* 192 N.L.R.B. 837 (1971). It will *not,* however, defer to arbitration conduct equivalent to a rejection of collective bargaining principles. The availability of arbitration does not divest the labor board of its statutory authority to deal with unfair labor practices. 29 U.S.C. § 160 (a); *Carey*

grievances violates the duty to bargain in good faith, as the National Labor Relations Board has consistently held. See, e.g., *Conoco, Inc.*, 287 N.L.R.B. 548 (1987); *Manchester Health Center, Inc.*, 287 N.L.R.B. 328 (1987); *Wald Mfg. Co.*, 176 N.L.R.B. 839 (1969). Repudiation of an arbitration award may also violate the duty to bargain in good faith; *Meat & Allied Food Workers Local No. 248* v. *Packerland Packing Co.*, 411 F. Sup. 1280 (E.D. Wis. 1976); *O. P. Held, Inc.*, 286 N.L.R.B. 676 (1987); *B. N. Beard Co.*, 231 N.L.R.B. 191 (1977); when the repudiation constitutes a rejection of the grievance process itself. See *General Chemical Corporation*, 290 N.L.R.B. No. 13, 131 L.R.R.M. (BNA) 1103 (July 29, 1988).[12]

v. *Westinghouse Electric Corporation*, 375 U.S. 261, 271, 84 S. Ct. 401, 11 L. Ed. 2d 320 (1964); *Smith* v. *Evening News Assn.*, 371 U.S. 195, 197, 83 S. Ct. 267, 9 L. Ed. 2d 246 (1962); see also *Local 1219* v. *State Labor Relations Board*, 171 Conn. 342, 354, 370 A.2d 952 (1976).

[12] The National Labor Relations Board does not generally view a single instance of repudiation, in and of itself, as an unfair labor practice. *Molders Local 164 (Pacific Steel)*, 270 N.L.R.B. 1105, 1108 (1984), enf'd, 765 F.2d 858 (9th Cir. 1985); *Danny's Foods, Inc.*, 260 N.L.R.B. 1445, 1448 (1982); *Malrite of Wisconsin, Inc.*, 198 N.L.R.B. 241 (1972), enf'd sub nom. *Local Union No. 715, International Brotherhood of Electrical Workers, AFL-CIO* v. *N.L.R.B.*, 494 F.2d 1136 (D.C. Cir. 1974); just as a single breach of contract is not, in and of itself, an unfair labor practice. *Molders Local 164 (Pacific Steel)*, supra, 1108; *Papercraft Corporation*, 212 N.L.R.B. 240, 241 n.3 (1974). In *Malrite*, the board dismissed the charge that an employer's repudiation of an arbitrator's decision constituted an unfair labor practice, relying on the theory of deferral first enunciated in *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955); and emphasized that the union could seek enforcement of the decision in a court of law. See also *J & H Rainwear*, 273 N.L.R.B. 497 (1984). Subsequently, however, the board has ruled that where the events underlying the unfair labor practice charge occurred *after* the arbitrator's award, deferral was not appropriate. *Litton Systems*, 283 N.L.R.B. 973, 976 (1987). Where, as here, the event underlying the unfair labor practice charge—elimination of the position—occurred after the award, and the employer's justification for its action essentially repudiates the authority of an arbitrator to decide any promotional grievance, the reasoning of the National Labor Relations Board in *Malrite* does not apply. As discussed in footnote 4, supra, we need not decide whether the board of education's action was a repudiation of the letter of the award.

In this case, the board deliberately flouted the grievance arbitration provision of the contract between the board and the Teachers' Association. Instead of seeking to vacate or modify the award pursuant to General Statutes §§ 52-418,[13] 52-419[14] and 52-420,[15]

[13] "Sec. 52-418.  VACATING AWARD. (a)  Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides, or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b)  If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c)  Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the state board of mediation and arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

[14] "Sec. 52-419.  MODIFICATION OR CORRECTION OF AWARD. (a)  Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated, or, when the court is not in session, any judge thereof, shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it was a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy.

"(b)  The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

[15] "Sec. 52-420.  MOTION TO CONFIRM, VACATE OR MODIFY AWARD. (a)  Any application under section 52-417, 52-418 or 52-419 shall be heard in the manner provided by law for hearing written motions at a short calen-

it decided to do indirectly what it could not do directly: keep Fred Schipul out of the position that the arbitrator had determined he was qualified for and entitled to hold.

The board argues that its sincere belief that Schipul was unqualified somehow releases it from its duty to comply in good faith with the grievance arbitration process. It is not exceptional for an employer charged with violating a promotion provision in a collective bargaining agreement to believe sincerely that the grievant is less qualified than the candidate promoted. The point is that the board of education agreed to let an *arbitrator* decide whether the grievant was the most qualified candidate for the position in question. Once the board agreed to subject promotions to the grievance process, it was bound by the arbitrator's decision. *East Haven* v. *AFSCME, Council 15, Local 1662,* 212 Conn. 368, 372, 561 A.2d 1388 (1989); *Milford Employees Assn.* v. *Milford,* 179 Conn. 678, 684, 427 A.2d 859 (1980); *Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 62, 357 A.2d 466 (1975). " 'There are situations in which it is not enough that an employer is convinced he is right,' *N.L.R.B.* v. *M & M Oldsmobile, Inc.,* [377 F.2d 712, 716 (2d Cir. 1967)], and this is one of them." *General Teamsters Local 162* v. *N.L.R.B.,* 568 F.2d 665, 668 (9th Cir. 1978).

dar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay.

"(b) No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion.

"(c) For the purpose of a motion to vacate, modify or correct an award, such an order staying any proceedings of the adverse party to enforce the award shall be made as may be deemed necessary. Upon the granting of an order confirming, modifying or correcting an award, a judgment or decree shall be entered in conformity therewith by the court or judge granting the order."

The board further contends that its obligations under General Statutes §§ 10-220[16] and 10-222[17] exempt it from the rule that an arbitrator's unchallenged decision is final and binding. Under these statutes, the board is required to "implement the educational interests of the state . . . as in its judgment will best serve the interests of the school district" and is authorized to spend the money the town appropriates for education "in [its] discretion." The board argues that these statutes require it to eliminate a teaching position rather than allow a teacher the board feels is unqualified to hold that position.

The board's argument reaches too far. If § 10-220 compels the board of education to follow its own judgment at all times, § 10-220 could just as easily compel the board of education to perform acts specifically prohibited by the statutes, including discrimination on the basis of race, sex or union membership, so long as the board genuinely believed those acts were in the best interests of the school district. " ' "In construing a statute, common sense must be used, and the courts will assume that the legislature intended to accomplish a reasonable and rational result." ' " *Ford Motor Credit Co.* v. *B.W. Beardsley, Inc.*, 208 Conn. 13, 20, 542 A.2d 1159 (1988). "A statute . . . should not be interpreted

[16] General Statutes § 10-220 provides in pertinent part: "DUTIES OF BOARDS OF EDUCATION. (a) Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district . . . shall employ and dismiss the teachers of the schools of such district subject to the provisions of sections 10-151 and 10-158a . . . and shall perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law."

[17] General Statutes § 10-222 provides in pertinent part: "APPROPRIATIONS AND BUDGET. FINANCIAL INFORMATION SYSTEM. (a) . . . . The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education."

to thwart its purpose." *Builders Service Corporation* v. *Planning & Zoning Commission,* 208 Conn. 267, 276, 545 A.2d 530 (1988). The legislature did not intend the general mandate of § 10-220 to swallow up the collective bargaining process mandated by the TNA.

Finally, the board of education argues that it cannot be an unfair labor practice for it to perform an act that lies within its exclusive discretion, namely, the elimination of a teaching position. We have held, however, that a public employer's discretion to hire and fire[18] may not be used as a "subterfuge to circumvent the provisions of the act." *Winchester* v. *State Board of Labor Relations,* 175 Conn. 349, 369, 402 A.2d 332 (1978); *L. Suzio Construction Co.* v. *State Board of Labor Relations,* 148 Conn. 135, 144, 168 A.2d 553 (1961); *Imperial Laundry, Inc.* v. *State Board of Labor Relations,* 142 Conn. 457, 467, 115 A.2d 439 (1955).

The facts in *Winchester* are especially similar to the facts now before us. In that case, the Winchester fire department eliminated its only salaried position after Armand Sartirana, who held the position, joined a union. Although we held in *Winchester* that the protections of MERA did not cover a one-person bargaining unit, so that the employer had no duty to conduct contract negotiations with the union; *Winchester* v. *State Board of Labor Relations,* supra, 361–62; we went on to hold that the *employee's* rights under MERA had nevertheless been violated when the position was eliminated, even though the department claimed that the position was eliminated for economic reasons. Id., 371. While *Winchester* dealt with anti-union animus in violation of General Statutes § 7-470 (a) (1) (parallel to General Statutes § 10-153e [b] [1]), which is not alleged in the present case, and did not address the scope of

---

[18] The discretionary power to hire and fire may, of course, be limited by a contractual "just cause" requirement, a grievance procedure, or a statute.

the discretion granted to school boards, it presented essentially the same issue we confront here: may a public employer do indirectly what it is forbidden to do directly, that is, may it use its discretionary power to eliminate a position in order to bring about a prohibited result? In *Winchester* and in the present case, the answer is "no."

## III

Once the labor board had correctly determined that the board of education had committed an unfair labor practice, it was empowered to order a remedy that would best effectuate the purposes of the act. General Statutes § 10-153e (e).[19] Our labor board, like the National Labor Relations Board, has broad remedial powers. *Board of Education* v. *State Board of Labor Relations,* supra, 241. Its enumerated powers include the power to order reinstatement and back pay for unjustly terminated employees, including the power to order reinstatement of all employees who have been subject to an unfair labor practice. General Statutes § 31-107 (c).[20] A public employer subject to such an

[19] General Statutes § 10-153e (e) provides in pertinent part: "If, upon all the testimony, said board determines that the party complained of has engaged in or is engaging in any prohibited practice, it shall state its finding of fact and shall issue and cause to be served on such party an order requiring it to cease and desist from such prohibited practice, and shall take such further affirmative action as will effectuate the policies of subsections (b) to (d), inclusive, of this section."

[20] General Statutes § 31-107 (c) provides as follows: "A stenographic or electronic record of the testimony shall be taken at all hearings of the board and a transcript thereof shall be filed with the board upon its request. The board shall have the power to order the taking of further testimony and for further argument. If, upon all the testimony, the board determines that the employer has engaged in or is engaging in any unfair labor practice, it shall state its finding of fact and shall issue and cause to be served on such employer an order requiring him to cease and desist from such unfair labor practice, and shall take such further affirmative action as will effectuate the policies of this chapter, including, but not limtied to: (1) Withdrawal of recognition from and refraining from bargaining collectively with any company union, established, maintained or assisted by any action defined

order would implicitly have to find the necessary funds to comply with a back pay order. In this case, of course, the labor board's order requires the board of education to restore and fund a position it had voted to eliminate. The board of education argues that creation and elimination of teaching positions lies within its exclusive authority and that the labor board exceeded its authority by requiring the board to recreate a defunct teaching position. "The short answer is that the Board had jurisdiction to find an unfair labor practice and to remedy it." *N.L.R.B.* v. *M & M Oldsmobile, Inc.,* supra, 716.

While as a general proposition it is true that creation or elimination of teaching positions is within the "sound discretion" of the board of education; *Baston* v. *Ricci,* 174 Conn. 522, 528, 391 A.2d 161 (1978); *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 586; we have also held that the TNA divests the board of education of some of its discretionary power under

---

in this chapter as an unfair labor practice; (2) awarding of back pay; (3) reinstatement with or without back pay of any employee discriminated against in violation of section 31-105 or by maintenance of a preferential list from which such employee shall be returned to work; (4) reinstatement with or without back pay of all employees whose work has ceased or whose return to work has been delayed or prevented as the result of unfair labor practice in respect to any employee or employees or the maintenance of a preferential list from which such employees shall be returned to work. Such order may further require such person to make reports from time to time showing the extent to which the order has been complied with. If upon all the testimony the board is of the opinion that the person or persons named in the complaint have not engaged in or are not engaging in any such unfair labor practice, then the board shall make its finding of fact and shall issue an order dismissing the complaint. The board shall not require as a condition of taking action or issuing any order under this chapter that employees on strike or engaged in any other lawful concerted activity shall discontinue such strike or such activity. Until a transcript of the record in a case has been filed in the superior court, as provided in section 31-109, the board may, at any time, upon notice, modify or set aside in whole or in part any finding or order made or issued by it. Proceedings before the board shall be held with all possible expedition."

General Statutes §§ 10-220 and 10-222. *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra. A board of education may not use its discretionary power to eliminate teaching positions in order to bypass the grievance arbitration process. Consequently, the labor board has the power to order the board of education to restore a teaching position eliminated for such an improper purpose. The board of education retains the right to eliminate the position if it has a legitimate reason for doing so, or to terminate or demote the teacher if his performance is objectively inadequate.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the board of education's appeal from the decision and order of the labor board.

In this opinion the other justices concurred.