AFSCME, COUNCIL 4, LOCAL 287 *v.* STATE BOARD
OF LABOR RELATIONS ET AL.
(AC 16692)

Foti, Schaller and Sullivan, Js.

Argued April 1—officially released July 28, 1998

*Jason W. Cohen,* with whom, on the brief, was *J. William Gagne, Jr.,* for the appellant (plaintiff).

*Marguerite D. Matt,* assistant general counsel, with whom, on the brief, was *Jaye Bailey Zanta,* general counsel, for the appellee (named defendant).

*Jay E. Bovilsky*, with whom, on the brief, was *Kevin D. O'Leary*, for the appellee (defendant board of education of the city of New Haven).

*Opinion*

FOTI, J. The plaintiff, AFSCME, Council 4, Local 287 (union), appeals from the judgment of the trial court dismissing its administrative appeal from the decision by the defendant state board of labor relations (board) concerning grievances the union had filed against the defendant New Haven board of education (employer). On appeal, the union claims that the trial court improperly held that (1) the board's decision that the union had repudiated the collective bargaining agreement by failing to abide by the arbitration awards was not clearly erroneous in light of the substantial evidence in the record and (2) the board was justified in awarding costs and expenses to the employer on the basis of the substantial evidence in the record. We affirm the judgment of the trial court.

The facts of this case are not in dispute. The union and the employer were parties to a collective bargaining agreement (contract) for the period July 1, 1989, through June 30, 1992. The contract provided for the arbitration of grievances and defined a grievance as "any asserted violation of the specified terms or provisions of [the contract]."

In January, 1990, the employer reduced the amount of overtime worked by union members. Union members typically worked overtime when activities took place in the schools at night. As a consequence of the reduction in overtime, twenty-seven members of the union filed grievances against the employer. Each of the twenty-seven grievances alleged that the employer did not have the right to eliminate overtime and was in violation of §§ 39 (past practice) and 27 (overtime) of the contract. This allegation was the sole complaint in

three of the grievances. Twenty-three grievants alleged that other union members were performing work during their regular shifts that had previously been performed by the grievants during overtime. One grievant alleged that nonunion employees were performing union work.

Seven of the grievances were arbitrated, and awards were issued in all of them. The arbitrators decided with respect to each grievance that the employer had the right to eliminate overtime. Two of the awards found that the union had failed to prove that other union members were performing the work. With respect to three of the grievances, which were heard simultaneously, the arbitration panel warned the employer not to allow nonunion employees to perform union work, but found there was no evidence to support such a claim.[1]

After four of the above awards had been issued, the employer's attorney wrote a letter dated May 26, 1993, to a union representative, requesting that the union "withdraw any and all pending grievances which challenge the [employer's] authority to eliminate overtime" because "the currently pending cases merely revisit this same issue of the [employer's] authority to eliminate overtime," and "the arbitration decisions issued to date make it clear that there is no good faith reason to continue to challenge the existence of this authority." The union did not respond to the letter and did not withdraw the grievances challenging the employer's authority to eliminate overtime.

Thereafter, the employer filed a complaint with the board, alleging the union had violated the Municipal

---

[1] Of the remaining twenty grievances, five were scheduled for arbitration hearings, but had not yet been held, at the time of the board hearing. One grievance had been arbitrated, but the arbitrator resigned prior to issuing an award, thus requiring another hearing. Hearings had been held in the other fourteen grievances, but one member of the arbitration panel died prior to the issuing of an award. Rehearings were required in each of those grievances and had not yet been held at the time of the board hearing.

Employees Relations Act (act), General Statutes § 7-467 et seq. Contested evidentiary hearings were held before the board on November 30, 1993, and February 17, May 2 and 5, 1994. The board issued its decision on January 17, 1996, finding that the union had violated the act. The board's decision directed the union to withdraw certain issues from the arbitration cases and to pay the employer's associated costs and expenses.

The union filed a timely appeal to the Superior Court. The union's brief on appeal to the trial court was limited to the claim that the board's decision was clearly erroneous in light of the evidence in the record. The trial court dismissed the union's appeal, finding that the facts of the case support the conclusion that the union failed to abide by several valid arbitration awards on the same issue concerning the elimination of overtime. The trial court found that the board's conclusion that the union had repudiated the contract was supported by the substantial evidence in the record and properly awarded the employer costs. The union appealed.

"In accordance with widely held principles of administrative and labor law, we traditionally have accorded deference to the labor board's interpretation of the acts it is charged with enforcing. . . . [R]eviewing courts should uphold reasonable and defensible constructions of an agency's enabling Act . . . . The agency's practical construction of the statute, if reasonable, is high evidence of what the law is. . . . In judging whether the labor board's interpretation was reasonable, we may look to federal labor law for guidance in construing our labor relations acts." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 119–20, 584 A.2d 1172 (1991).

The standard of review of an administrative agency's rulings is well established. General Statutes § 4-183 (j)

provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

Our Supreme Court "has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." (Citations omitted; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145, 523 A.2d 1271 (1987).

On appeal, the union claims that the board's decision that the union repudiated the contract and that the employer was entitled to costs and expenses was not supported by substantial evidence in the record. "[T]he

[reviewing] court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. . . . Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Citations omitted; internal quotation marks omitted.) *Lieberman* v. *State Board of Labor Relations*, 216 Conn. 253, 262, 579 A.2d 505 (1990).

I

The union's first claim is that the trial court improperly held that the board's conclusion that the union had repudiated the contract was not clearly erroneous in light of the substantial evidence in the record. See General Statutes § 4-183 (j) (5). We disagree.

The following additional facts are necessary for our resolution of the union's claim. Prior to the board hearing, the union claimed that it was not committing a prohibited practice by pursuing the twenty remaining grievances because there were issues in those grievances that differed from the issue that had already been litigated. At the hearing, however, the union's counsel claimed that the union was no longer contesting the employer's right to eliminate overtime. The union said that the twenty remaining grievances contest the employer's action in subcontracting the work that was formerly performed on an overtime basis. The board found to the contrary.

"[T]he documentary evidence and the testimony of witnesses make clear that, prior to union counsel's statement at this hearing, the union was actively and zealously pursuing, in the remaining twenty grievances, the issue of the [employer's] right to eliminate overtime. Each of the remaining twenty grievances alleges, on its face, a violation of Article 37, 'Past Practices,' clearly

indicating the existence of the union's previous argument that the [employer] could not eliminate the practice of assigning overtime work. Further, in fifteen of the grievances, the union has already filed a brief explaining its position. . . . In each brief, it is clear that a primary argument is that overtime cannot be eliminated." This finding was included in the decision and order of the board dated January 17, 1996.

"The duty to bargain in good faith is a term of art in labor law. It is an ongoing duty that continues after initial contract negotiations are over. . . . It includes the duty to negotiate any question arising under an existing contract. . . . If the contract requires arbitration of unresolved grievances, the duty to bargain in good faith includes the duty to participate in good faith in the grievance arbitration process, for dispute resolution under the grievance-arbitration process is as much a part of collective bargaining as the act of negotiating the contract." (Citations omitted; internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, supra, 217 Conn. 120–21. A breach of the duty to bargain in good faith is an attempt to evade the statutorily mandated collective bargaining process. See id., 122.

The union's attempt to evade the arbitrators' decisions in the seven grievances concerning the employer's eliminating overtime is no different from a repudiation of the arbitration process itself. "Since repudiation of the collective bargaining agreement as a whole constitutes ipso facto a breach of the duty to bargain in good faith . . . [r]epudiation of an arbitration award may also violate the duty to bargain in good faith . . . when the repudiation constitutes a rejection of the grievance process itself." (Citations omitted.) Id., 122–23.

There is substantial evidence in the record before us to conclude that the trial court's dismissal of the union's

appeal from the board's decision was proper. In its brief, the union claims that bad faith does not exist because the union representative who received the May 26, 1993 letter from the employer's attorney asking the union to withdraw the pending grievances challenging the employer's right to eliminate overtime was not a lawyer. This argument is disingenuous at best, if not a test of the gullibility of the court. While the letter may not have been received by a lawyer, this court has no doubt that it was seen by the union's counsel sometime before the board hearing. As the board noted quite appropriately, the union could easily have informed the employer that the elimination of overtime was no longer an issue in the grievances. It does not escape our attention that the union did not even afford the employer the simple courtesy of responding to the letter. The purpose of arbitration is to avoid the expense and delay of litigation. The path chosen by the union in this case defies that public policy, at public expense no less. The union repudiated the contract by pursuing the issue of the employer's right to eliminate overtime in twenty grievances after arbitrators had found in favor of the employer in seven grievances. Such conduct constitutes bad faith on the part of the union.

## II

The union's second claim is that the trial court improperly dismissed the union's appeal, finding on the basis of the substantial evidence in the record that the board was justified in awarding costs and expenses to the employer.[2] We agree with the trial court.

The basis of the union's claim is that its defense was debatable and not frivolous because there were issues

---

[2] The employer argues that the union's claim is not reviewable by this court because the issue was not raised before the trial court. See Practice Book § 4061, now Practice Book (Rev. 1998) § 60-5. Our review of the record discloses that the union raised this issue at oral argument before the trial court.

other than the employer's right to eliminate overtime in the twenty grievances not yet arbitrated, particularly the issue concerning the use of nonunion employees to perform overtime. Although the board and the trial court found that there were other issues in some of the outstanding grievances, the record clearly indicates that the union continued to pursue zealously the issue of the employer's right to eliminate overtime. The board correctly concluded that the union's pursuit of that issue was in bad faith, constituting repudiation of the contract.

General Statutes § 7-471 (5)[3] directs the board that if it finds that a party is committing a practice prohibited by the act, to "take such further affirmative action as will effectuate the policies of [the act]." Awarding the employer costs and expenses is well within the discretion of the board.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] General Statutes § 7-471 (5) provides in relevant part: "Whenever a question arises as to whether a practice prohibited by sections 7-467 to 7-477, inclusive, has been committed by a municipal employer or employee organization, the board shall consider that question in accordance with the following procedure . . . (B) If, upon all the testimony, the board determines that a prohibited practice has been or is being committed, it shall state its findings of fact and shall issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will effectuate the policies of sections 7-467 to 7-477, inclusive, including but not limited to . . . (iii) if either party is found to have refused to bargain collectively in good faith, ordering arbitration and directing the party found to have refused to bargain to pay the full costs of arbitration under section 7-473c, resulting from the negotiations in which the refusal to bargain occurred. . . ."