[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff is an individual resident of New Haven, Connecticut, employed by the defendant City of New Haven. The plaintiff, pursuant to the Municipal Employees Relations Act ("MERA", General Statutes § 7-467, et seq.) was represented for collective bargaining purposes by Local 713, Council for American Federation of State, County Municipal Employees ("AFSCME"), AFL-CIO. The defendant, Connecticut State Board of Labor Relations ("CSBLR") is an administrative agency of the State of Connecticut Department of Labor authorized pursuant to General Statutes § 7-471 to enforce the Municipal Employees Relations Act. The plaintiff, on June 28, 1996, complained to the CSBLR that the City of New Haven had violated MERA by failing to honor a stipulation settling a grievance relating to his reinstatement as a city employee. The repudiation by an employer of such an agreement would constitute a violation of the duty to bargain in good faith. AFSME, Council 4, Local 287 v. State Board of LaborRelations, 49 Conn. App. 513 (1998). Also see Local 18 of Councilfor AFSME, AFL-CIO v. Town of East Haven, 42 Conn. Sup. 227
(1992).
The CSBLR was unable to resolve the plaintiff's complaint through informal preliminary steps and the matter was heard as a contested hearing on January 24, 1997, at which time the union and employer were represented and allowed to present evidence, CT Page 9216 examine and cross-examine witnesses and make argument. In a decision dated August 25, 1997, the Labor Board dismissed the plaintiff's complaint. It is from this dismissal decision that the plaintiff brings this appeal pursuant to the Uniform Administrative Procedures Act, §§ 4-166, 4-183 ("UAPA"). The complaint was filed October 10, 1997. The record was filed November 2, 1998, the plaintiff's brief, January 25, 1999 and a brief by the Labor Board on March 18, 1999. The parties were heard in oral argument on June 30, 1999.
At the outset, the court notes the "standard of review for all of the plaintiff's claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dept. of Social Services,49 Conn. App. 432, 436 (1998).
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is CT Page 9217 reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable TelevisionAssn., Inc. v. DPUC, 247 Conn. 95, 117-18 (1998).
The defendants do not dispute and the court finds that the plaintiff is aggrieved by the Labor Board decision dismissing his complaint which seeks a substantial cash payment to the pension fund on plaintiff's account. In his brief, the plaintiff makes two claims: (1) that the agreement is clear on its face in requiring the City to make his pension contribution; and (2) if there is ambiguity in the agreement, the party's intention was to clearly require the pension contribution by the employer City of New Haven.
The court is not persuaded by the plaintiff's arguments and finds the issues for the CSBLR and City.
The facts are accurately set forth in the decision's findings of fact #4-11.
 4. The City appealed the Labor Board decision to Superior Court. On August 12, 1994, Allesandrine and the City entered into an agreement settlement the outstanding Labor Board matter, which settlement provided in relevant part:
 WHEREFORE, the City of New Haven and Alfred Allesandrine [sic] agrees as follows:
 (A) Alfred Allesandrine shall be re-employed by the City of New Haven in the position of "Supervisor of Workfare" with substantially the same duties and responsibilities as he had prior to October 15, 1990. The truck driver position classification previously held by Mr. Allesandrine shall be deleted from his duties and responsibilities save the assignment of a vehicle to him for purposes of performing the CT Page 9218 "supervisor of Workfare" duties. Mr. Allesandrine's duties shall entail the supervision of a crew of "Workfare" employees who may be dispatched to various maintenance assignments as City of New Haven property.
 Alfred Allesandrine shall not report to, work from or work out of the Public Works building, although the position of "Supervisor of Workfare" may fall within the Department of Public Works budget.
 (B) Alfred Allesandrine shall be reinstated to said position with salary, benefits, credited service, and seniority equivalent to that to which he would have been entitled had there been no loss of or break in his service/employment with the City of New Haven. The City of New Haven hereby covenants and agrees that Alfred Allesandrine's employment, as aforestated, shall not be terminated but for cause and that position of Supervisor of Workfare shall not be eliminated during the course of labor union contract negotiations nor for any reason other than legitimate business purposes.
 (C) The following benefits are to be credited to Mr. Alessandrine and he shall be made whole for any loss in such benefits due to any break in service/employment since October 15, 1990; (1) longevity pay; (2) seniority; (3) personal days; (4) vacation time; and (5) sick leave. In addition and likewise, Mr. Allesandrine shall be credited service toward his pension benefit plan as if there had been no break in his service/employment with the City of New Haven since October 15, 1990. Any and all rights which Mr. Allesandrine would have under the terms of his pension plan to reimburse the monies which he withdrew shall be available to him and the City of New Haven shall take all necessary and legal steps or measures to facilitate and allow him to reimburse the withdrawn monies into his pension plan. (See Schedule A, attached hereto)
 (I) Alfred Allesandrine hereby releases the City of New Haven from any obligation for back pay under the terms of the decision in the above referenced labor decision. (Ex. 1).
 5. During the time that he was not employed by the City from 1990 to 1994, Allesandrine had withdrawn over nine thousand dollars from his pension plan. The agreement allowed him to repay that amount in order to reinstate his CT Page 9219 pension, which repayment he made.
 6. During settlement discussions between the parties concerning Decision Number 3129, there was no specific reference to the issue of who would pay Allesandrine's employee contribution to the pension plan for the period that Allesandrine was unemployed.
 7. After the settlement agreement was signed, Allesandrine's attorney, Kirt Westfall and City of New Haven Labor Relations Director Lisa Grasso engaged in discussions and correspondence about reinstating Allesandrine's pension and other issues regarding the settlement agreement. In one letter dated May 25, 1995, Grasso indicated that, in her opinion, Allesandrine would be responsible for paying the employee contribution for the period that he was out of work. (Ex. 4).
 8. By letter dated July 12, 1995 Westfall wrote to Grasso stating: ". . . While we certainly agree that Mr. Allesandrine is required to contribute his share toward the pension fund, the City must contribute in order for Mr. Allessandrine to do so." (Ex. 5).
 9. By letter dated September 5, 1995, Westfall confirmed interim discussions with Grasso regarding their understanding of the pension issue, stating in relevant part:
 As far as the other significant issue remaining, you indicated to me that you had spoken with Greg Brown in regards to the pension issue. You explained that, under the term of our August 14, 1994 Agreement, Mr. Allesandrine is entitled to service credit for his lost time towards his pension. Therefore, if Mr. Allesandrine contributes his portion to the pension plan, the City will match his contributions pursuant to the percentages called for in the plan. You also indicated that the administrator had agreed to allow Mr. Allesandrine to make these contributions and thereby give him the service credit for the actual break in his service such that his pension contributions and total pension accumulation would be the same as if he had no break in service. (Ex. 6). CT Page 9220
 10. By letter dated September 27, 1995, Westfall again confirmed interim discussions with Grasso and requested pension contribution information from her, stating in relevant part:
 . . . pursuant to our most recent meeting, please provide the information about Al's pension which you promised. You said that you had spoken to Greg Brown and had confirmed that Al is entitled to service credit. You stated that the Plan Administrator had agreed to allow Al to make contributions to the Plan for the period of October 15, 1990 through his return to work (on August 12, 1994) and that the City would likewise make its matching contributions for such period. Thus, I am writing for the exact breakdown of the monies to be contributed by Al. (Ex. 7).
 11. During a portion of the time that Westfall and Grasso were communicating about the implementation of the settlement agreement as described above, Grasso was under the impression that the City was obligated to match, dollar for dollar, the contribution made by Allesandrine to his pension plan. At some point during this period, the City Comptroller's office clarified to Grasso that the City did not match exactly the employee contribution but instead made a percentage contribution based on the entire payroll for the year.
The only reference to pension benefits is set forth under Section C of the agreement which states in pertinent part: "In addition and likewise, Mr. Allesandrine shall be credited service towards his pension benefit plan as if there had been no break in his service/employment with the City of New Haven since October 15, 1990." This is clearly no expression of an obligation by the City to pay the employee's pension contribution. Such a step which was contrary to the normal course, where the employee made a contribution, would need to be explicitly set forth. The agreements reference to "made whole for any loss in such benefits" does not mention pension benefits. Making Allesandrine whole would certainly not require the City to pay his share of the pension contribution. That would place him in a more advantageous position to other employees who paid their pension contribution from their own funds. The pension contribution would have been his obligation if he had remained employed. Thus the "made whole" provision is inapplicable. The finding of fact (#6) CT Page 9221 that no reference to the payment of the pension contribution was made during the settlement discussions is supported by the evidence in the record. This is apparent from the testimony and also the correspondence (Exhibits 4, 5, 6 and 7, Findings of Fact #7, 8, 9 and 10). There is no logical reading of the provision regarding Allesandrine's reimbursement of his pension withdrawals, which would, in any way, infer a pension contribution obligation to the City. The Labor Board's decision is supported by substantial evidence in the record and it is affirmed. The plaintiff's appeal is dismissed.[1]
Robert F. McWeeny, J.