UNIVERSITY OF CONNECTICUT v. FREEDOM OF
INFORMATION COMMISSION
(13803)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued November 1, 1990—decision released February 5, 1991

*Paul M. Shapiro,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* then attorney general, and *Carolyn K. Querijero,* assistant attorney general, for the appellant (plaintiff).

*Victor R. Perpetua,* commission counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (defendant).

SHEA, J. This is an administrative appeal from a decision of the freedom of information commission (FOIC) ordering the University of Connecticut (UConn) to disclose the names of students employed in its public safety division to reporters for the university student newspaper. The dispositive issue is whether General Statutes § 1-19 (b) (11)[1] permits the university to withhold such information. We hold that when students'

---

[1] General Statutes § 1-19 provides in pertinent part: "ACCESS TO PUBLIC RECORDS. EXEMPT RECORDS. (a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-15. . . .

"(b) Nothing in sections . . . 1-19 . . . shall be construed to require disclosure of . . . (11) names or addresses of students enrolled in any public school or college without the consent of each student whose name or address is to be disclosed who is eighteen years of age or older and a parent or guardian of each such student who is younger than eighteen years of age, provided this subdivision shall not be construed as prohibiting the disclosure of the names or addresses of students enrolled in any public school in a regional school district to the board of selectmen or town board of finance, as the case may be, of the town wherein the student resides for the purpose of verifying tuition payments made to such school . . . ."

names are sought based on their student status, § 1-19 (b) (11) allows the university to withhold that information.

The FOIC found the following facts, which are not in dispute. On November 5, 1987, Karen Ali, a reporter for The Daily Campus (the UConn student newspaper) wrote to the UConn police department to request a list of UConn students employed with the police department from September 1 through November 5, 1987. The department's executive director then asked its fifty-five student employees for permission to release their names. Forty-two objected, four indicated no preference, and nine did not respond. The director offered Ali the opportunity to review only the names of the thirteen student employees who did not object to disclosing their names. Ali and The Daily Campus thereafter filed a complaint with the FOIC. The FOIC ordered the university to disclose the names. UConn appealed to the Superior Court, but the trial court dismissed the appeal. This appeal followed.

The administrative record shows that the fifty-five student employees received hourly wages in exchange for duties which included giving parking tickets, escorting other students across campus, operating security and information booths, and supplementing dormitory security. They received no academic credit for their employment. The positions they held were, however, limited to students of the university.

The Connecticut Freedom of Information Act (FOIA), General Statutes §§ 1-7 through 1-21k, lists a number of exemptions from its broad mandate of disclosure. One such exemption is § 1-19 (b) (11), which provides that "[n]othing . . . shall be construed to require disclosure of . . . (11) names or addresses of students enrolled in any public school or college without the consent of each student whose name or address

is to be disclosed who is eighteen years of age or older and a parent or guardian of each such student who is younger than eighteen years of age . . . ." The FOIC construed the term "students" to include only those persons whose *sole* affiliation with an educational institution is as students or, possibly, whose affiliation includes employment directly related to a program of study. Accordingly, the FOIC concluded that because the students in question were hourly employees whose employment was unrelated to their educational experience, § 1-19 (b) (11) did not permit the university to withhold their names from the student reporter who sought them.

The FOIC then considered the university's contention that § 1-19 (a), which requires disclosure "[e]xcept as otherwise provided by any federal law or state statute," exempted it from disclosing the names requested because 20 U.S.C. § 1232g,[2] the "Buckley Amendment," prohibits federal funding of educational institutions that disclose such information about students.

---

[2] Title 20 of the United States Code § 1232g provides in pertinent part: "(a) Conditions for availability of funds to educational agencies or institutions; inspection and review of education records; specific information to be made available; procedure for access to education records; reasonableness of time for such access; hearings; written explanations by parents; definitions

* * *

"(5) (A) For the purposes of this section the term 'directory information' relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

"(B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time after

The FOIC concluded that because the Buckley Amendment merely conditioned funding on nondisclosure and did not prohibit disclosure, it did not come within the

such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent.

\* \* \*

"(b) Release of education records; parental consent requirement; exceptions; compliance with judicial orders and subpoenas; audit and evaluation of federally-supported education programs; recordkeeping

"(1) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization, other than to the following—

"(A) other school officials, including teachers within the educational institution or local educational agency, who have been determined by such agency or institution to have legitimate educational interest;

"(B) officials of other schools or school systems in which the student seeks or intends to enroll, upon condition that the student's parents be notified of the transfer, receive a copy of the record if desired, and have an opportunity for a hearing to challenge the content of the record;

"(C) authorized representatives of (i) the Comptroller General of the United States, (ii) the Secretary, (iii) an administrative head of an education agency (as defined in section 1221e-3 (c) of this title), or (iv) State educational authorities under the conditions set forth in paragraph (3) of this subsection;

"(D) in connection with a student's application for, or receipt of, financial aid;

"(E) State and local officials or authorities to whom such information is specifically required to be reported or disclosed pursuant to State statute adopted prior to November 19, 1974;

"(F) organizations conducting studies for, or on behalf of, educational agencies or institutions for the purpose of developing, validating, or administering predictive tests, administering student aid programs, and improving instruction, if such studies are conducted in such a manner as will not permit the personal identification of students and their parents by persons other than representatives of such organizations and such information will be destroyed when no longer needed for the purpose for which it is conducted;

"(G) accrediting organizations in order to carry out their accrediting functions;

"(H) parents of a dependent student of such parents, as defined in section 152 of title 26; and

§ 1-19 (a) "federal law" exemption to disclosure. Because we hold that § 1-19 (b) (11) permits the university to withhold the requested information, we do not address this second issue.[3]

---

"(I) subject to regulations of the Secretary, in connection with an emergency, appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons.

"Nothing in clause (E) of this paragraph shall prevent a State from further limiting the number or type of State or local officials who will continue to have access thereunder.

"(2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection unless—

"(A) there is written consent from the student's parents specifying records to be released, the reasons for such release, and to whom, and with a copy of the records to be released to the student's parents and the student if desired by the parents, or

"(B) such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders of subpoenas as in advance of the compliance therewith by the educational institution or agency."

[3] We note that the federal regulations promulgated under the authority of 20 U.S.C. § 1232g include the records of student employees within the definition of "educational record," which are not subject to disclosure without the students' consent, when the students' employment is conditioned upon their student status. Title 34 of the Code of Federal Regulations, § 99.3 (1990) provides in part: "Education records (a) The term means those records that are: (1) Directly related to a student; and (2) Maintained by an educational agency or institution or by a party acting for the agency or institution. (b) The term does not include . . . (3) (i) Records relating to an individual who is employed by an educational agency or institution, that: (A) Are made and maintained in the normal course of business; (B) Relate exclusively to the individual in that individual's capacity as an employee; and (C) Are not available for use for any other purpose. (ii) Records relating to an individual in attendance at the agency or institution who is employed as a result of his or her status as a student are education records and not excepted under paragraph (b) (3) (i) of this definition." Thus, the Buckley Amendment does prohibit funding of colleges that disclose information contained in the records of student employees when, as here, the students are employed by virtue of their student status. The Buckley Amendment permits routine disclosure of "directory information"; 20 U.S.C. § 1232g (b) (1) and (a) (5) (A); see footnote 2, supra; if the educational insti-

The trial court limited its review of the FOIC decision to whether the FOIC's interpretation of § 1-19 was "reasonable." While we ordinarily accord deference to an agency's interpretation of the legislation it is charged with enforcing; *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 119–20, 584 A.2d 1172 (1991); the agency's interpretation is only persuasive, not dispositive. "The interpretation of statutes presents a question of law"; *Board of Education* v. *Freedom of Information Commission,* 217 Conn. 153, 158, 585 A.2d 82 (1991); which is ultimately for the court to decide.

If the language of a statute is clear and unambiguous, its meaning is not subject to construction. *Cilley* v. *Lamphere,* 206 Conn. 6, 9–10, 535 A.2d 1305 (1988). When application of the statute to a particular situation reveals a latent ambiguity in seemingly unambiguous language, however, we turn for guidance to the purpose of the statute and its legislative history to resolve that ambiguity. See *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988). Despite the "parade of horribles" suggested by the FOIC,[4] no such latent ambiguity is suggested by the record before us.

tution follows an "opt-out" procedure allowing a parent to object to the disclosure. 20 U.S.C. § 1232g (a) (5) (B). To answer the request at issue, however, UConn would have had to disclose not only mere names and addresses, but also the fact that the named students were employed by the university police department.

[4] The FOIC contends, for example, that a literal interpretation of the statute could lead to a bizarre result if the "student" is a regular police officer enrolled in one evening course at the university. Applying such an interpretation, UConn would then be permitted to withhold the name of the officer from an individual seeking to depose the officer in connection with a lawsuit, to make a complaint about a false arrest, or to bring an action under 42 U.S.C. § 1983 for violation of his civil rights by the officer in the exercise of his police duties. If student status is not a condition of his employment, however, our decision in this case would not authorize withholding the name of the officer.

It is undisputed that the students whose names were sought were enrolled in the university. The plain language of § 1-19 (b) (11) applies, therefore, to protect them from the mandatory disclosure requirements of the FOIA. The FOIC contends, however, that the students were the subject of inquiry in their capacity as employees, not in their capacity as students, and that this difference renders § 1-19 (b) (11) ambiguous and subject to the rule of construction that exemptions from the FOIA will be narrowly construed. *Board of Education* v. *Freedom of Information Commission,* supra, 160. We disagree.

The facts before us do *not* indicate that student status was merely incidental to the claimant's request. Ali's letter specifically sought "a list of *all those UConn students* that have been employed by the police department from September 1 through November 5," 1987. (Emphasis added.) Regardless of the limitation of the request to students who were employees, we construe § 1-19 (b) (11) to permit withholding of the names of those employees whose student status was a condition of their employment. Uncontroverted testimony made clear that the students employed by the department held positions reserved exclusively for students of the university. These facts suggest no reason for us to depart from the plain meaning of the statute, which exempts from the disclosure requirement the "names [and] addresses of students enrolled in any public . . . college." As there is no ambiguity in the statute as applied to this request, the FOIC's ruling was based on an error of law and should have been reversed.[5]

---

[5] Our conclusion is bolstered by the legislative history of subdivision (11) to General Statutes § 1-19 (b), which was added to No. 77-609 of the 1977 Public Acts as a house amendment.

At a hearing on the original, unamended version of the bill, held before the Joint Standing Committee on Government Administration and Policy,

The judgment is reversed and the case is remanded with direction to render judgment sustaining the appeal.

In this opinion the other justices concurred.

an attorney for the Connecticut Association of Boards of Education, Jeffrey C. Pingpank, brought up the potential conflict between the Buckley Amendment and the FOIA. He cited a ruling by the FOIC ordering a school to disclose information about a student despite the school's contention that such a disclosure would violate the Buckley Amendment and cause it to lose federal funds. See Conn. Joint Standing Committee Hearings, Government Administration and Policy, Pt. 2, 1977 Sess., p. 406. In fact, the FOIC had made several such rulings in 1976–77. See, e.g., *In the Matter of Volak* v. *Berlin,* Docket No. FIC76-176 (February 3, 1977); see also *In the Matter of Wilkins* v. *Board of Education,* Docket No. FIC77-56 (April 27, 1977); *In the Matter of Cosgrove* v. *State,* Docket No. FIC76-216 (January 17, 1977).

Three months after the committee hearing, house amendment A to the original bill was submitted for a vote. That amendment contained what is now § 1-19 (b) (11). Expressing guarded support for the amendment, Senator Joseph Lieberman commented, "Mr. President, I support adoption of the amendment with this caveat. In my understanding of it, it represents a legislative attempt to, in a sense, amend the ruling of the Freedom of Information Commission . . . ." 20 S. Proc., Pt. 10, 1977 Spec. Sess., p. 4128.

While we must be cautious in relying upon statements made in committee hearings or by supporting legislators, this legislative record strongly suggests, at the least, that the legislature intended to free educational institutions from the risk of losing their federal funding by violating the Buckley Amendment in order to comply with the FOIA.