# Commission on Human Rights and Opportunities v. Windsor Hall Rest Home et al.
## (14983)

Peters, C. J., and Borden, Berdon, Norcott and Palmer, Js.

Argued October 28, 1994—decision released February 7, 1995

*Charles Krich*, staff attorney, with whom was *Philip A. Murphy, Jr.*, commission counsel, for the appellant (plaintiff).

*Lissa J. Paris*, with whom was *Hugh F. Murray III*, for the appellee (named defendant).

BORDEN, J. The issue in this appeal is whether, under the circumstances of this case, the oral decision of a presiding officer at an administrative hearing of the commission on human rights and opportunities (commission) dismissing a complaint was a "final decision" of the commission within the meaning of General Statutes § 4-183 (c),[1] so as to trigger the forty-five day time period within which a party must appeal. The trial court rendered judgment dismissing the administrative appeal of the plaintiff commission from the decision of its hearing officer for lack of subject matter jurisdiction. On appeal from the judgment of the trial court,[2] the commission claims that the trial court improperly

---

[1] General Statutes § 4-183 (c) provides: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the attorney general in Hartford and file the appeal with the clerk of the superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the person appealing resides or, if that person is not a resident of this state, with the clerk of the court for the judicial district of Hartford-New Britain. Within that time, the person appealing shall also serve a copy of the appeal on each party listed in the final decision at the address shown in the decision, provided failure to make such service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. Service of the appeal shall be made by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions."

[2] The commission appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

concluded that the presiding officer's oral decision was a final decision from which an appeal would lie under the Uniform Administrative Procedure Act (UAPA), chapter 54 of the General Statutes. We affirm the judgment of the trial court.

The facts are undisputed. The complainant, Wardine W. Couch,[3] filed a complaint with the commission against her former employer, the defendant Windsor Hall Rest Home, alleging that her discharge had been racially motivated. The commission found reasonable cause and convened a hearing on November 3 and 4, 1992, before a presiding officer appointed pursuant to General Statutes § 46a-84 (b).[4]

The commission presented the complaint on behalf of Couch, who was present at all times. Couch and representatives of the defendant testified and submitted documentary evidence. Following the presentation of evidence by the commission, its counsel stated that the commission had no further evidence in support of its prima facie case. The defendant moved that the complaint be dismissed for lack of evidence of racial motivation. The commission objected to the motion, arguing

[3] Wardine W. Couch was named as a defendant in the trial court, along with Windsor Hall Rest Home, Genesis Health Ventures, Inc., a foreign corporation doing business as Windsor Hall Rest Home, Genesis Health Ventures of Windsor, Inc., a foreign corporation doing business as Windsor Hall Rest Home, and Gail S. Kotowski, the presiding officer of the commission. Only the commission and the Windsor Hall Rest Home have participated in this appeal. We refer herein to Windsor Hall Rest Home as the defendant.

[4] General Statutes § 46a-84 (b) provides: "Upon certification of the complaint, the executive director of the commission or his designee shall appoint a hearing officer to act as a presiding officer to hear the complaint and shall cause to be issued and served in the name of the commission a written notice, together with a copy of the complaint, as the same may have been amended, requiring the respondent to answer the charges of the complaint at a hearing before the presiding officer at a time and place to be specified in the notice, provided such hearing shall be held not later than ninety days after a finding of reasonable cause."

that it was only required to submit evidence raising an inference of discrimination to establish a prima facie case in order to shift to the defendant the burden of articulating a legitimate, nondiscriminatory reason for the discharge.

On November 4, 1992, in the presence of Couch and counsel for the parties, the presiding officer orally granted the defendant's motion to dismiss, stating that the commission had not submitted evidence raising an inference of discrimination. Specifically, the presiding officer stated: "I'm going to grant [the] motion [to dismiss] and the basis . . . is that I agree that there has been no inference raised that [Couch] was discharged due to race. She was discharged due to perceived neglect for failing to chart crucial information that would have alerted the staff. I'm not going to comment on that there may be other negligence in terms of the disappearance or the losing of this patient at the shopping mall. However, the concern is that the administration of [the defendant's] facility is a team administration and it focuses on passing information. And how it's done is through charting. And Nurse Bourgault . . . did what she was supposed to do with respect to the finding of [a patient] walking down the street. And it was reasonable. And the follow-up of that does not raise the inference that because she was white that she was not fired. There has been absolutely no inference raised that there was any racial motivation in this at all. Granted, Mrs. Couch is a member of a protected class. But because she's a member of a protected class and happens to be fired doesn't raise the inference automatically that it was racially motivated." After the counsel for the commission stated that she took an exception to the ruling, the presiding officer stated: "You have an exception. You have your right to appeal." The presiding officer did not issue a written decision.

On November 19, 1992, the commission filed a petition with the presiding officer for reconsideration of the decision pursuant to General Statutes § 4-181a.[5] On January 11, 1993, the presiding officer issued a written decision denying the petition for reconsideration. The written decision stated in pertinent part: "ORDER: DENIED. The undersigned has the authority to grant a Motion to Dismiss after the Commission rested, as the Commission failed to establish a prima facie case."

---

[5] General Statutes § 4-181a provides: "CONTESTED CASES. RECONSIDERATION. MODIFICATION. (a) (1) Unless otherwise provided by law, a party in a contested case may, within fifteen days after the personal delivery or mailing of the final decision, file with the agency a petition for reconsideration of the decision on the ground that: (A) An error of fact or law should be corrected; (B) new evidence has been discovered which materially affects the merits of the case and which for good reasons was not presented in the agency proceeding; or (C) other good cause for reconsideration has been shown. Within twenty-five days of the filing of the petition, the agency shall decide whether to reconsider the final decision. The failure of the agency to make that determination within twenty-five days of such filing shall constitute a denial of the petition. (2) Within forty days of the personal delivery or mailing of the final decision, the agency, regardless of whether a petition for reconsideration has been filed, may decide to reconsider the final decision. (3) If the agency decides to reconsider a final decision, pursuant to subdivision (1) or (2) of this subsection, the agency shall proceed in a reasonable time to conduct such additional proceedings as may be necessary to render a decision modifying, affirming, or reversing the final decision.

"(b) On a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion. The procedure set forth in this chapter for contested cases shall be applicable to any proceeding in which such reversal or modification of any final decision is to be considered. The party or parties who were the subject of the original final decision, or their successors, if known, and intervenors in the original contested case, shall be notified of the proceeding and shall be given the opportunity to participate in the proceeding. Any decision to reverse or modify a final decision shall make provision for the rights or privileges of any person who has been shown to have relied on such final decision.

"(c) The agency may, without further proceedings, modify a final decision to correct any clerical error. A person may appeal that modification under the provisions of section 4-183 or, if an appeal is pending when the modification is made, may amend the appeal."

On January 22, 1993, seventy-nine days after the oral decision dismissing the complaint and eleven days after the written decision denying the petition for reconsideration, the commission filed this appeal in the trial court, pursuant to § 4-183 of the UAPA,[6] challenging the presiding officer's decision to dismiss the complaint.

The trial court dismissed the commission's appeal for lack of subject matter jurisdiction because the appeal had not been filed within forty-five days after the presiding officer's oral decision on November 4, 1992, as required by § 4-183 (c). This appeal followed.

The commission claims that its appeal was timely under § 4-183 because: (1) General Statutes § 46a-94a contemplates that a final decision of the commission be in writing; (2) under General Statutes § 46a-86 (e), a dismissal of a complaint must be in writing; (3) the commission's regulations are consistent with and support the construction that §§ 46a-94a and 46a-86 (e) mandate a written final decision; and (4) even if a final decision of the commission may be made orally, an oral decision is not final for purposes of appeal until it is reduced to writing, an event that did not take place until the presiding officer's written denial of the petition for reconsideration.

The commission concedes that "[i]f an oral ruling satisfies the statutes, the [commission's] appeal is clearly untimely under . . . § 4-183." The gist of the commission's argument is that, under the specific statutes and regulations governing its procedures, an order of a presiding officer dismissing a complaint must be in writing. The commission contends that these specific statutory and regulatory provisions take precedence over what it regards as the more general provisions

---

[6] General Statutes § 46a-94a, which governs the commission, provides for an appeal from a "final order" of a commission hearing officer "in accordance with section 4-183."

of the UAPA. It argues, therefore, that there was no order from which an appeal could be taken under the UAPA until the presiding officer's written denial of the petition for reconsideration. The necessary implication of this position is that the oral decision rendered on November 4, 1992, was a nullity for purposes of appeal under the UAPA. We are not persuaded.

The failure of a party to file an administrative appeal under the UAPA within the forty-five days required by § 4-183 (c) deprives the trial court of subject matter jurisdiction over the appeal. *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 852, 633 A.2d 305 (1993). Moreover, the filing of a petition for reconsideration of an agency decision does not toll the running of the forty-five day time limit; *Cassella* v. *Dept. of Liquor Control*, 30 Conn. App. 738, 741, 622 A.2d 1018, cert. denied, 226 Conn. 909, 628 A.2d 983 (1993); and the commission does not contend otherwise.

There can be no question that the UAPA recognizes an appeal from an oral decision of an agency. General Statutes § 4-180 (c) specifically provides that "[a] final decision in a contested case shall be in writing *or orally stated on the record* and, if adverse to a party, shall include the agency's findings of fact and conclusions of law necessary to its decision. . . ."[7] (Emphasis added.)

---

[7] General Statutes § 4-180 (c) provides: "A final decision in a contested case shall be in writing or orally stated on the record and, if adverse to a party, shall include the agency's findings of fact and conclusions of law necessary to its decision. Findings of fact shall be based exclusively on the evidence in the record and on matters noticed. The agency shall state in the final decision the name of each party and the most recent mailing address, provided to the agency, of the party or his authorized representative. The final decision shall be delivered promptly to each party or his authorized representative, personally or by United States mail, certified or registered, postage prepaid, return receipt requested. The final decision shall be effective when personally delivered or mailed or on a later date specified by the agency."

The issue of statutory construction posed by the commission's argument, therefore, is whether the terms of § 4-180 (c) take precedence over what the commission perceives to be the mandate of the statutes and regulations governing it, namely, that a final decision of a presiding officer dismissing a complaint be in writing. We conclude that this oral decision of the commission's presiding officer was the "final decision" of the commission that triggered the forty-five day appeal period under the UAPA, and that neither the statutes nor the regulations regarding the commission take precedence over the UAPA by clearly mandating a written decision to trigger the right to appeal.

First, it would elevate form over substance to conclude, as the commission argues, that the oral decision was a nullity, and did not become final until the written decision on the petition for reconsideration. The decision of the presiding officer contained all of the factual findings and legal conclusions necessary to support a dismissal for lack of a prima facie case. The oral decision was rendered in the presence of the complainant and counsel for the parties, and was transcribed. It is clear from the record that all of the parties to the administrative proceedings considered the decision to be final and to dispose of the complaint when orally rendered. Indeed, the presiding officer specifically referred to the right of the commission to appeal therefrom. Moreover, the oral decision was more specific with respect to the necessary facts and legal conclusions than was the written decision on the petition for reconsideration.

Second, the language of § 4-180 (c); see footnote 7; strongly suggests that the oral decision in this case was final for purposes of an appeal under § 4-183, despite the fact that the decision was not executed in a manner that would otherwise lend itself to the formalities attendant on a written decision. Section 4-180 (c) spe-

cifically contemplates an oral decision precisely like that rendered in this case.[8] As previously noted, the oral decision was stated "on the record" in the presence of all interested parties, and it included "the agency's findings of fact and conclusions of law necessary to its decision." General Statutes § 4-180 (c). It was transcribed, and there is no suggestion that it was not based "exclusively on the evidence in the record and on matters noticed." General Statutes § 4-180 (c).

It is true that § 4-180 (c) requires that the decision contain the name and most recent mailing address of each party or his authorized representative, and that the decision "shall be *delivered* promptly to each party or his authorized representative, *personally*" or by certified or registered mail. (Emphasis added.) Although this language might suggest, on its face, a written form of decision, the fact that § 4-180 (c) specifically contemplates a final decision "orally stated on the record" must mean that, in such a case, the requirement of the name and address is directory only; cf. *Rogers* v. *Commission on Human Rights & Opportunities*, 195 Conn. 543, 547, 489 A.2d 368 (1985) (deviation from regulatory requirement of notice by registered mail did not render notice by certified mail invalid); and that the concept of personal delivery would be satisfied by an oral decision rendered in the presence of the parties or their counsel.

Third, the "main objective [of the UAPA] was uniform procedure." *Hirschfeld* v. *Commission on Claims*, 172 Conn. 603, 607–608, 376 A.2d 71 (1977); *Connecticut Natural Gas Corp.* v. *Dept. of Public Utility Control*, 1 Conn. App. 1, 3, 467 A.2d 679 (1983). This

---

[8] In this respect, this procedure under the UAPA is analogous to that in other areas of the civil law. Pursuant to General Statutes § 51-53 and Practice Book § 4009, the time for taking an appeal runs from the rendering of a civil judgment in a nonjury case in open court in the presence of counsel.

objective is codified in the implied repeal provision of the UAPA, General Statutes § 4-189.[9] *Hirschfeld* v. *Commission on Claims,* supra, 606. As we discuss more fully later in this opinion, there is no language in the statutes and regulations governing the commission that specifically mandates a decision in writing and prohibits an oral decision; compare id., 607 ("no review" language governing decisions of commission on claims too specific to be implicitly repealed by UAPA); and the commission does not contend to the contrary. The argument of the commission is based, rather, on what it perceives to be necessary implications of those statutes and regulations. It would be inconsistent, however, with the UAPA's objective of procedural uniformity to permit mere perceived implications to take precedence over the more specific provision of § 4-180 (c).

Fourth, it is clear that all of the parties, including the commission, treated this oral decision as final when it was rendered. Although not determinative, it is significant that the agency itself implicitly interpreted its statutes and regulations as contemplating the oral decision as final. See *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991); *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 119–20, 584 A.2d 1172 (1991). The commission at no time sought, either by an internal procedure or by resort to § 4-180 (a) and (b),[10] to compel the presiding officer to reduce her oral

---

[9] General Statutes § 4-189 provides: "REPEAL OF INCONSISTENT PROVISIONS. Any provisions in the general statutes that are inconsistent with the provisions of this chapter are repealed, provided nothing contained in this chapter shall be deemed to repeal provisions in the general statutes that provide for the confidentiality of records."

[10] General Statutes § 4-180 provides in pertinent part: "CONTESTED CASES. FINAL DECISION. APPLICATION TO COURT UPON AGENCY FAILURE. (a) Each agency shall proceed with reasonable dispatch to conclude any matter pending before it and, in all contested cases, shall render a final deci-

decision to writing. Furthermore, the commission filed its petition for reconsideration fifteen days after the oral decision "pursuant to . . . § 4-181a." See footnote 5. Section 4-181a (a) (1) provides in pertinent part: "Unless otherwise provided by law, a party in a contested case may, within *fifteen days* after the *personal delivery* or mailing of the *final decision,* file with the agency a petition for reconsideration . . . ." (Emphasis added.)

Fifth, concluding that the oral decision in this case was a nullity for purposes of an appeal under the UAPA, as the commission suggests, would lead to bizarre results. For example, despite the presiding officer's statements on the record in the presence of the parties, including her specific reference to the commission's right to appeal, if no one sought a petition for reconsideration or invoked some other procedure yielding a written decision, the appeal period would have extended indefinitely. We are not inclined to read our statutes to yield such a result.

The commission argues that the statutes governing its procedure and the regulations promulgated thereunder mandate a written decision in order to trigger an appeal under the UAPA. The statutes on which it relies are General Statutes § 46a-94a and 46a-86 (e).[11]

---

sion within ninety days following the close of evidence or the due date for the filing of briefs, whichever is later, in such proceedings.

"(b) If any agency fails to comply with the provisions of subsection (a) of this section in any contested case, any party thereto may apply to the superior court for the judicial district of Hartford-New Britain for an order requiring the agency to render a final decision forthwith. The court, after hearing, shall issue an appropriate order."

[11] General Statutes § 46a-94a provides: "APPEAL TO SUPERIOR COURT FROM ORDER OF PRESIDING OFFICER. (a) The commission on human rights and opportunities, any respondent or any complainant aggrieved by a final order of a presiding officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183, except venue for such appeal shall be in the judicial district in which the discriminatory practice is alleged to have occurred or

The regulations are §§ 31-125-45,[12] 31-125-46,[13] 31-125-47[14] and 31-125-53,[15] of the Regulations of Connecticut State Agencies, which were in effect at the

in the judicial district in which such person resides or transacts business. The court on appeal shall also have jurisdiction to grant to the commission, respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed.

"(b) Notwithstanding the provisions of subsection (a) of this section, a complainant may not appeal the dismissal of his complaint if he has been granted a release pursuant to section 46a-101."

General Statutes § 46a-86 (e) provides: "If, upon all the evidence, the presiding officer finds that the respondent has not engaged in any alleged discriminatory practice, the presiding officer shall state his findings of fact and shall issue and file with the commission and cause to be served on the respondent an order dismissing the complaint."

[12] Section 31-125-45 of the Regulations of Connecticut State Agencies provides: "CONTENTS OF ORDERS. An order of the commission issued after hearing shall set forth the findings of fact of the hearing tribunal, its decision and, in its discretion, an opinion containing the reasons for such decision."

[13] Section 31-125-46 of the Regulations of Connecticut State Agencies provides: "ISSUANCE OF ORDERS. If, upon all the evidence, the hearing tribunal finds that a respondent has engaged in any unfair employment practice, it shall state its findings of fact and shall issue and file with the commission and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice. If, upon all the evidence, the hearing tribunal finds that a respondent has not engaged in any alleged unfair employment practice, it shall state its findings of fact and shall similarly issue and file an order dismissing the complaint."

[14] Section 31-125-47 of the Regulations of Connecticut State Agencies provides: "FILING OF ORDERS. All orders rendered after a hearing shall be filed at the office of the commission in the city of Hartford and shall be open to public inspection during regular office hours."

[15] Section 31-125-53 of the Regulations of Connecticut State Agencies provides: "SERVICE OF PROCESS. Complaints, answers, orders and other process and papers of the commission may be served personally, by registered mail, by telegraph or by leaving a copy thereof in the principal office or place of business or abode of the persons to be served. The verified return of the individual serving the same, setting forth the manner of service, shall be proof of the same, and the return post-office receipt or telegraph receipt, when the service is by registered mail or telegraph, shall be proof of such service."

time of the presiding officer's oral decision, and two more recent regulations, §§ 46a-54-109 (a)[16] and 46a-54-111,[17] that were promulgated effective January 1, 1993, after the oral decision but before the denial of the petition for reconsideration.

The commission contends in essence that the use throughout these statutes and regulations of such terms as "serve" and "file," with respect to final decisions of the agency, mandates the conclusion that these statutes and regulations require a written decision and preclude an oral decision such as the one rendered in this case.[18] The commission bolsters this argument by resort to the statutory canon that provisions of special applicability take precedence over those of general applicability.

We recognize that these statutes and regulations, as phrased, contemplate that ordinarily the decision of the commission will be in writing. We also recognize that the legislature is free to require that any particular administrative agency's final decision be in writing

---

[16] Section 46a-54-109 (a) of the Regulations of Connecticut State Agencies provides: "Final decisions and orders shall contain the names and addresses of the parties, including the Commission; findings of fact and conclusions of law listed separately; the analysis of the presiding officer; and an appropriate order and such other requirements as may be contained in Chapter 54 of the Connecticut General Statutes."

[17] Section 46a-54-111 of the Regulations of Connecticut State Agencies provides: "The record of proceedings before the Commission shall include, but not be limited to, the complaint and amended complaint, if any, the answer and the amended answer, if any, notices of hearing, written applications, motions, orders, stenographic transcript of the record of the hearing, exhibits and other evidence made part of the record, briefs, if any, and the final decision and order of the presiding officer."

[18] In this connection, the reliance of the commission on § 46a-94a is more indirect. That statute does not contain terms such as "serve" and "file." The commission argues, nonetheless, that because § 46a-94a provides for an appeal "in accordance with section 4-183," and because § 4-183 uses such terms, § 46a-94a must be read to mandate a written decision. The flaw in this argument, however, is that § 4-183 (c) specifically refers to § 4-180, which specifically provides for an oral decision on the record.

and that, regardless of the circumstances, unless and until an oral decision is reduced to writing it does not trigger an appeal under the UAPA. Under those circumstances, such a statute would constitute, as the commission argues that these statutes are, a specific exception to the provision in § 4-180 (c) for oral decisions on the record. We do not read these statutes and regulations, however, as intending such a result.

There is no language in these statutes or regulations that specifically calls for a written, as opposed to an oral, decision.[19] Neither is there anything that specifically addresses the situation posed by the facts of this case, in which the presiding officer rendered a complete oral decision on the record that was intended to be, and that the parties must have understood as, final. We therefore decline to read them in such a way as to undermine the UAPA objective of uniformity of administrative procedure, to elevate the form of the decision over its substance, and to lead to potentially bizarre results.

The commission also argues that even if the oral decision was final, it was not final for purposes of appeal until it was reduced to writing by virtue of the written denial of the petition for reconsideration. This argument is without merit. There is nothing in either the language or the policy of the UAPA to suggest such a bifurcated analysis of the finality of an administrative decision. The principal purpose of determining whether an administrative decision is "final" is to determine whether an appeal may be taken therefrom. Further, a denial of a petition for reconsideration does not

---

[19] We note in this connection that § 46a-54-109 of the regulations regarding final decisions and orders; see footnote 17; specifically relates to "such other requirements as may be contained in Chapter 54 of the Connecticut General Statutes." Nothing in chapter 54—the UAPA—requires final decisions to be in writing. To the contrary, as we already have discussed, § 4-180 (c) authorizes final decisions to be rendered orally.

affect the finality of the original decision, nor is the denial of the petition itself a final decision for purposes of appeal. General Statutes § 4-166 (3).

The judgment is affirmed.

In this opinion PETERS, C. J., and NORCOTT and PALMER, Js., concurred.

BERDON, J., dissenting. Chapter 54 of the General Statutes, the Uniform Administrative Procedure Act (UAPA), provides that a final decree may be "orally stated in the record." General Statutes § 4-180. If § 4-180 alone was applicable to the commission on human rights and opportunities (commission), I would agree with the majority that the oral ruling by the presiding officer in this case constituted a final decision and that the appeal was not timely filed. We have long adhered, however, to the principle that specific terms in a statute covering a given matter will prevail over the more general language of another statute. *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 476–77, 582 A.2d 190 (1990); *Kelly* v. *Dewey*, 111 Conn. 281, 292, 149 A. 840 (1930) (" '[w]here there are two provisions in a statute, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and, if both cannot apply, the particular provision will be treated as an exception to the general provision' ").

General Statutes § 46a-86, which specifically applies to the commission, indicates that a decision on a motion to dismiss a complaint must be in writing. Section 46a-86 (e) provides that "[i]f, upon all the evidence, the presiding officer finds that the respondent has not engaged in any alleged discriminatory practice, the presiding officer shall state his findings of fact and shall

issue and file with the commission and cause to be served on the respondent an order dismissing the complaint." Because § 46a-86 specifically pertains to the commission it prevails over the more general administrative agency provisions included in the UAPA.[1]

Both the plain language of this specific provision and public policy considerations compel the conclusion that the decision of a hearing officer dismissing a complaint must be in writing. First, the requirement of § 46a-86 (e) that the hearing officer "file" his order indicates that it must be written. Absent a technical meaning or the use of a term of art, or except where the context requires otherwise, we must construe words used in statutes and regulations according to their commonly approved usage. *Carr* v. *Bridgewater*, 224 Conn. 44, 56–57, 616 A.2d 257 (1992). "To file" means: "to deliver (as a legal *paper* or *instrument*) . . . to the proper officer for keeping on file or among the records of his office"; or "to place (as a *paper* or *instrument*)

---

[1] Furthermore, the commission's regulations that were in effect at the time of the complaint at issue in this case indicate that orders generally issuing from the commission must be in writing. See Regs., Conn. State Agencies § 31-125-46 (presiding officer must issue and file with the commission and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair employment practice or issue and file with the commission an order dismissing the complaint), § 31-125-47 (commission must file all orders at the office of the commission in the city of Hartford and keep such orders open to public inspection), § 31-125-53 (orders may be served personally, by registered mail, by telegraph or by leaving a copy thereof in the principal office or place of business or abode of the persons to be served). When an act may be accomplished orally, the commission's regulations explicitly say so. See Regs., Conn. State Agencies §§ 31-125-31 and 31-125-48. This court must accord great deference to the construction given a statute by the agency charged with its enforcement. *Preston* v. *Dept. of Environmental Protection*, 218 Conn. 821, 830, 591 A.2d 421 (1991). This principle applies with even greater force to the agency's interpretation through its own duly adopted regulations which have the same force and effect of law unless they are shown to be inconsistent with the authorizing statutes. *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986).

on file among the legal or official records of an office [especially] by formally receiving, endorsing and entering." (Emphasis added.) Webster's Third New International Dictionary. The definition of the term when used in a legal context is practically identical: "to file" means "[t]o lay away and arrange in order, pleadings, motions, instruments, and other papers for preservation and reference." Black's Law Dictionary (6th Ed. 1991). There is no reason to interpret "to file" under § 46a-86 (e) as implicating any meaning other than its ordinary usage. The presiding hearing officer in this case was therefore required "to file" her decision with the commission and, because oral decisions cannot be filed, a written decision is mandated under § 46a-86.[2]

Second, public policy considerations strongly support the conclusion that a presiding hearing officer may only issue a written final decision dismissing a complaint. Complaints made to the commission often implicate sensitive matters of constitutional proportions. For example, in this case the complainant claimed that her employer discriminated against her because of her race. If, as in this case, the presiding hearing officer determines that the complaint should be dismissed for failure to establish a prima facie case, the requirement that the decision be set forth in writing enhances the perception of the agency's credibility by assuring a more thoughtful decision.

---

[2] I disagree with the majority's analysis that the oral ruling of the presiding officer was final because the commission did not seek "either by an internal procedure or by resort to § 4-180 (a) and (b), to compel the presiding officer to reduce her oral decision to writing." There is simply no requirement that the commission initiate such a process. In this case, eleven days after the hearing officer rendered a written decision, albeit on the motion to reargue, the commission filed its appeal. Furthermore, the majority's concern that if a written decision were required, the appeal period could be extended indefinitely is unfounded. Although neither party is obligated to invoke § 4-180 in order to obtain a written decision, either may do so, thereby limiting the appeal period.

Accordingly, I am of the opinion that the time in which the commission was required to file its appeal— that is, forty-five days—did not begin to run until the hearing officer filed a written decision. This was not done until January 11, 1993.[3] Therefore, the appeal filed on January 22, 1993, by the commission was timely.

I respectfully dissent.

---

[3] As a practical matter, the appeal should not have come as a surprise to the defendant, Windsor Hall Rest Home. The hearing officer delivered an oral decision on November 4, 1992, dismissing the complaint. On November 19, 1992, the commission petitioned the hearing officer to reconsider the decision of dismissal. On January 11, 1993, the hearing officer issued a written decision denying the petition to reconsider. This appeal followed on January 22, 1993.