[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
Before this court are cross motions for summary judgment brought by the plaintiff, Municipal Funding LLC, and the defendant, the City of Waterbury. On September 12, 2000, the plaintiff filed an application for a writ of mandamus requesting, that this court order the defendant to endorse an insurance check, in the amount of $342,542.99, that was issued to cover fire damage at certain property known as 300 Schraffts Drive in Waterbury, Connecticut. The City of Waterbury filed an answer and counterclaim, alleging, inter alia, that it also has an interest in the proceeds of the check and that the court should hold the proceeds in escrow until the court determines the rightful distribution of the proceeds. The plaintiff then filed an answer to the counter claim, alleging that the defendant has no interest in the insurance check at issue because it is subsequent in priority and that the defendant may only be able to claim proceeds in subsequent payments if the amount of such proceeds is sufficient to exceed all prior interests. CT Page 5741-ev
The plaintiff has filed a motion for summary judgment, arguing that there are no genuine issues of material fact, and that as a matter of law, the plaintiff has priority over the insurance proceeds for its three tax liens. The defendant has also filed a motion for summary judgment in objection to the plaintiff's motion on the grounds that there are no genuine issues of material fact, and as a matter of law, the plaintiff cannot claim the insurance proceeds for its tax liens.
Accordingly, the only issue presented by the cross-motions for summary judgment is whether the plaintiff is entitled to priority regarding the insurance proceeds. Because the court finds that the debt for the plaintiff's tax liens were extinguished at the time it took absolute title to the property, the court grants summary judgment in favor of the defendant.
 DISCUSSION
"Practice Book . . . [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381,385-86, 752 A.2d 503 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. UnitedTechnologies Corp., 233 Conn. 732, 751, 660 A.2d 810 (1995).
The following facts are not in dispute. The plaintiff, Municipal Funding, purchased certain municipal tax liens[1] for real estate taxes owed to the City of Waterbury for the grand list years 1993, 1994 and 1995, relating to property known as 300 Schrafts Drive, and otherwise known as the Red Bull Inn. The assignment to the plaintiff included an agreement with the City of Waterbury wherein the plaintiff agreed not to foreclose on the City of Waterbury's water and sewer liens, but would take the property subject to those liens and then pay them off with interest. (Defendant's Exhibit. D.) In addition to the plaintiff's tax liens, a company named Angram owns municipal tax liens on the subject property from tax list years 1996 and 1997, and the city of Waterbury continues to have municipal tax liens on the subject property from tax list years 1998 and 1999. (Mahler's Aff. ¶¶ 5-6.)
As a result of being assigned the tax liens, the plaintiff was also CT Page 5741-ew substituted as a party plaintiff in the pending foreclosure action to foreclose on its 1993 and 1994 tax liens. See First Union National Bankv. Gunterman, Superior Court, judicial district of Waterbury, Docket No. 137607. The 1995 tax lien was not included in the foreclosure action. On January 19, 1999, the court, West, J., entered a judgment of strict foreclosure with law days to commence running on March 30, 1999, and found that the combined debt for the two foreclosed tax liens was $167,529.53 plus interest and fees. (Plaintiff's Exhibit. A.) On March 29, 1999, the court, West, J., reopened the foreclosure judgment again and reentered a judgment of strict foreclosure with law days to commence running on May 25, 1999. In addition, the court declared that the appraised value of the subject property was $450,000. (Mahler's Aff. ¶¶ 12-15.)
On May 24, 2000, before title vested in the plaintiff, there was a fire at the subject property. At the time of the fire, Reidville Scott was the owner of the property and maintained an insurance policy on the property that covered fire damage. (Mahler's Aff. ¶¶ 13-16.) The plaintiff did not seek to reopen the foreclosure judgment and proceeded to take title to the property on June 2, 1999. (Mahler's Aff. ¶ 21.) On May 23, 2000, the insurer of the subject property issued a check to the plaintiff and the City of Waterbury[2] in the amount of $342,542.99, in partial payment of the fire damage.
As a general rule, Connecticut state law allows a municipality precedence when foreclosing on its tax liens. General Statutes § 12-181
provides, in relevant part: "The tax collector of any municipality may bring suit for the foreclosure of tax liens in the name of the municipality by which the tax was laid." "Such [tax] lien . . . shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it. . . . No sale of real estate for taxes or foreclosure of any lien shall divest the estate sold of any existing lien for other taxes." General Statutes § 12-172 . "When any municipality acquires real estate by foreclosure . . . of a tax or an assessment lien or liens thereon. . . . [t]he acquisition of such real estate by the municipality shall be deemed a cancellation by such municipality of all of its claims against the tax collector for unpaid taxes and assessments, interest or lien fees assessed against such real estate. The real estate so acquired shall be held free of any taxes or assessments levied by the municipality which has acquired it until such real estate is sold." General Statutes § 12-195.
In 1993, the state legislature enacted legislation giving municipalities the right to sell municipal tax liens to private parties. CT Page 5741-ex "Any municipality . . . may assign, for consideration, any and all liens filed by the tax collector to secure unpaid taxes on real property. . . . The assignee or assignees of such liens shall have and possess the same powers and rights at law or in equity as such municipality and municipality's tax collector would have had if the lien had not been assigned with regard to the precedence and priority of such lien, the accrual of interest and the fees and expenses of collection. The assignee shall have the same rights to enforce such liens as any private party holding a lien on real property." General Statutes § 12-195h.
The plaintiff argues that because the fire occurred after the foreclosure action was initiated and before any party could redeem, the fire loss proceeds were still payable to the owner of the property at that time, subject to the plaintiff's tax liens. The plaintiff argues, therefore, that it can collect on the insurance proceeds to pay its tax liens even though it has already foreclosed on two out of the three tax liens. The plaintiff argues that the insurance proceeds should be disbursed according to the following priority: 1) the licensed public adjusters are due ten percent of each insurance check per an agreement entered in court; 2) the plaintiff should then be paid for its 1993 and 1994 tax liens; 3) the plaintiff should then be paid for its 1995 tax lien; 4) Angram should then be paid for its 1996 and 1997 tax liens; and 5) the City of Waterbury should then be paid for its 1998 and 1999 tax liens.
The City of Waterbury argues that when the plaintiff foreclosed on its 1993 and 1994 tax liens and took absolute title to the property, the debt to the plaintiff was extinguished. The city argues that the tax liens owned by Angram and the City of Waterbury have priority because they are the only remaining municipal tax liens.
With respect to the disbursement of fire insurance proceeds, General Statutes § 49-73a provides that: "The interest of each person in the proceeds of any policy issued by an insurance company providing fire insurance coverage . . . shall be subject to any tax lien on such item of real estate. . . ." Such tax lien "shall take precedence over any claim of right of an insured owner, mortgagee, assignee or other interested party. . . ." General Statutes § 49-73e.
Accordingly, the issue before the court is whether the plaintiff can claim the insurance proceeds for its tax liens. The plaintiff argues that it is entitled to the insurance proceeds for its tax liens in addition to foreclosing on them. The plaintiff cites Burritt Mutual Savinqs Bank v.Transamerica Ins. Co., 180 Conn. 71, 428 A.2d 333 (1980), where the court CT Page 5741-ey ruled that in some instances a mortgagee may recover fire insurance proceeds for its debt even after it acquired the property through strict foreclosure. See id., 84. In applying Burritt to this case, the plaintiff argues that because the fire occurred after the foreclosure was initiated, the insurance proceeds exist as "collateral security" for the underlying debt and replace the value lost by fire damage.
The Burritt ruling is clearly distinguishable from the facts of this case. In Burritt, our Supreme Court addressed the issue of whether a loss payable clause in a mortgage document entitled a mortgagee to fire insurance proceeds even though it foreclosed on the subject mortgage. See id., 76-78. The court held that because the loss payable clause "creates a direct contractual relationship between the mortgagee and the insurer," the mortgagee may have a continued right to the insurance proceeds despite the foreclosure proceeding. Id., 76-77.
Unlike Burritt, the plaintiff in this action was not a party to a loss payable clause giving the plaintiff a direct contractual right to the insurance proceeds. Plaintiff in this case has not even brought an action against the insurance company that insured the subject property.
With respect to the plaintiff's 1993 and 1994 tax liens, the plaintiff foreclosed on its 1993 and 1994 tax liens and acquired absolute title to the subject property. Accordingly, pursuant to Connecticut General Statutes § 12-195, those liens no longer exist and the plaintiff cannot now claim the insurance proceeds for them. Additionally, Burritt
specifically recognizes that in some cases "satisfaction of the mortgage debt extinguishes a mortgagee's insurable interest under a mortgage loss payable clause." As a matter of law, therefore, the court finds that the plaintiff does not have a right to the insurance proceeds for its 1993 and 1994 tax liens because it has already foreclosed on them.
Unlike its 1993 and 1994 tax liens, the plaintiff did not foreclose its 1995 tax lien. The issue that remains, therefore, is whether an assignee of tax liens, such as the plaintiff, can still hold a tax lien on property it now owns from a previous foreclosure judgement. As discussed above, Connecticut law provides that when a municipality forecloses on a tax lien and acquires absolute title to the property, all other liens or claims held by the municipality against the property are cancelled. See General Statutes § 12-195. As provided in § 12-195h, when an assignee acquires municipal tax liens, it also acquires the same rights and powers in law and in equity as the municipality with regard to precedence and priority. Connecticut General Statutes § 12-195h goes on to provide, however, that "[t]he assignee shall have the same rights CT Page 5741-ez to enforce such liens as any private party holding a lien on real property." This last provision of § 12-195h calls into question whether the plaintiff, as an assignee of tax liens, has more rights than a municipality and therefore, may be able to maintain tax liens on the subject property.
"To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further." Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 187, 592 A.2d 912 (1991); University ofConnecticut v. Freedom of Information Commission, 217 Conn. 322, 328,585 A.2d 690 (1991) "If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from `extrinsic aids,' e.g., the legislative history."Sanzone v. Board of Police Commissioners, supra, 219 Conn. 187. In this case, General Statutes § 12-195h is ambiguous because it provides more than one possible interpretation of an assignee's rights. Thus, it is necessary for the court to review the legislative history of §12-195h in order to clarify the legislature's intent.
In analyzing the legislative history of § 12-195h, the discussion from the House provides a useful clarification of the statute's language. Representative Mulready moved to adopt the amendment that would allow a municipality to sell its tax liens. See 36 H.R. Proc., Pt. 37, 1993 Sess., p. 13291. Representative Metz questioned the language of the amendment and asked: "[W]hy do we have the sentence that says [the assignee] would have the same rights to enforce such liens as any private party holding a lien on real property?" Id., 13304. Representative Mulready replied: "It seems to me that they have the same priorities and precedents as a municipality would have, but it would seem they would be required under this to foreclose as say, a lender would." Id. Representative Metz then asked: "[What] you are saying [is] that once the municipality has assigned the lien to a private party, then the only method of foreclosing or of collecting the lien would be if it is not paid directly, would be by judicial foreclosure in the same manner as an attachment or other normal lien that a private party might file?" Id., 13305. Representative Mulready stated: "[T]hat is what it appears to say." Id., 13306. Through this discussion, the House was able to clarify that the provision granting an assignee the same rights as a private party merely meant that, while a municipality can foreclose a tax lien by selling the property directly at its own auction, an assignee may only foreclose as a private party would, such as through a judicial foreclosure. CT Page 5741-fa
The court, therefore, finds that § 12-195h does not grant an assignee of tax liens more rights than a municipality, and that like the City of Waterbury, any other claims or taxes that the plaintiff may have had against the property, such as the 1995 tax lien, were cancelled once it foreclosed and acquired absolute title. See General Statutes §12-195.
The court notes that if the plaintiff believed the value of the property had changed because of the fire, it had legal remedies available to it. The plaintiff, however, failed to bring a motion to reopen the judgment after the fire occurred and failed to seek a deficiency judgment against the underlying debtor.
For the foregoing reasons, the only tax liens that remain on the subject property are those liens from the 1996 and 1997 grand lists, held by Angram, and those liens from the 1998 and 1999 grand lists, held by the City of Waterbury. "No . . . foreclosure of any lien shall divest the estate sold of any existing lien for other taxes." General Statutes § 12-172.
 CONCLUSION
Because the plaintiff foreclosed on its 1993 and 1994 municipal tax liens and acquired absolute title to the subject property, the plaintiff's 1993, 1994, and 1995 tax liens on the subject property were extinguished as a matter of law. As a matter of law, therefore, the tax liens held by Angram and the City of Waterbury have priority in the disbursement of the fire insurance proceeds.
For the foregoing reasons, the plaintiff's motion for summary judgment is denied and the City of Waterbury's motion for summary judgment is granted.
CHASE T. ROGERS, J.